United States District Court
Northern District of New York

People of the State of New York
by Letitia James, Attorney General
of the State of New York,

Plaintiff[1]

v.

Bowman's Gun Shop, LLC; and,
Timothy Bowman,

Defendant.

**NOTICE OF REMOVAL**
8:25-cv-1131 (MAD/DJS)

**TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK:**

**PLEASE TAKE NOTICE** that defendant Tim Bowman hereby files this Notice of Removal of the above-captioned action from the Supreme Court of the State of New York, County of St. Lawrence, Index No. EFCV-25-168235, pursuant to 28 U.S.C. §§1331, 1367, 1441, 1442(a)(1), and 1446, based on the facts set forth below:

## I. PROCEDURAL UNDERPINNINGS

1. On July 18, 2025, Plaintiff Attorney General of the State of New York (Office, thereof) filed a "Verified Petition" and "Notice of Petition" in the Supreme Court of the State of New

[1] "Petitioner" in the original; similarly, "Respondent." This "Notice" uses "Plaintiff" and "Defendant," throughout. The use of "Petition" is the title of the original document. If the word "Complaint" is used, herein, please read it as a reference to the document at Exhibit A, the "Petition" as first filed in state court.

York, County of St. Lawrence, Index No. EFCV-25-168235 ("Petition," herein), NYSCEF docs. 1 and 2. A copy of the Notice and Petition are attached as "Exhibit A."

2. A copy of the Notice and Petition were received by the Defendant on July 22, 2025.

3. No other defendant being named, no written consent of removal is required or attached.

4. This Notice of Removal is timely filed in accordance with 28 U.S.C. §1446(b)(1).

5. This civil action is within this Court's original jurisdiction under 28 U.S.C. §1442(a)(1) because federally-licensed dealers in firearms who are of Type-01 actively participate in the enforcement of federal firearms laws and regulations under and in conjunction with the U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATFE" or "ATF," interchangeably) and the Federal Bureau of Investigations ("FBI"), as discussed below. The "FFL Type-01" is the "Dealer in Firearms Other than Destructive Devices," including rifles, shotguns, pistols, revolvers, gunsmithing, and National Firearms Act ("NFA") weapons (collectively, herein "firearms").

6. This civil action is also, or, alternatively within this Court's original jurisdiction under 28 U.S.C. §1331 because the Plaintiff's Petition raises one or more substantial federal question(s), as discussed below, "arising under the Constitution, laws, or treaties of the United States."

7. This Court has supplemental jurisdiction over Plaintiff's claims not otherwise before this Court under 28 U.S.C. §1442(a)(1) or §1331, as forming part of the same case or controversy under 28 U.S.C. §1367.

8. Additionally, note is made that, “A single claim over which federal-question jurisdiction exists is sufficient to allow removal.” *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005).

## II. RELATED CASES AND STATUTES

9. Currently pending in federal court are at least four cases related to Plaintiff’s case being removed, two of which were uncontested removals by defendants from state court into federal court, as follows:

   a. Regarding NY Gen Bus §898 and PLCAA, *Nat’l Shooting Sports Foundation, et al.*[2] *v. Letitia James, New York Attorney General*, N.D.N.Y. case 1:21-cv-01348 (Hon. Mae D’Agostino, presiding).

   b. Regarding NY Gen Bus §898 and PLCAA, *City of Rochester v. Smith & Wesson Brands, et al.* [3], W.D.N.Y. case 6:23-cv-06061, unopposed removal from state to

---

[2] The full caption of co-plaintiffs includes, in addition to the NSSF, (1.) Beretta U.S. A. Corp.; (2.) Davidson’s, Inc.; (3.) Glock Inc.; (4.) Central Texas Gun Works; (5.) Hornady Manufacturing Company; (6.) Lipsey’s, LLC; (7.) Osage County Guns LLC; (8.) RSR Group, Inc.; (9.) Shedhorn Sports, Inc.; (10.) Sig Sauer, Inc.; (11.) Smith & Wesson Inc.; (12.) Sports South LLC; (13.) Sprague’s Sports Inc.; and, (14.) Sturm, Ruger & Company, Inc.

[3] The full caption involves thirty-three (33) co-defendants, namely, (1.) Smith & Wesson Brands, Inc.; (2.) Beretta U.S.A. Corp.; (3.) Bushmaster Firearms Industries, Inc.; (4.) Colt’s Manufacturing Company, LLC; (5.) Glock, Inc.; (6.) Hi Point Firearms, a/k/a “Strassel’s Machine, Inc.; (7.) JA Industries, LLC, f/k/a “Jennings Firearms,” f/k/a “Bryco Arms,” f/k/a “Jimenez Arms”; (8.) Kel-Tec CNC Industries, Inc.; (9.) O.F. Mossberg & Sons, Incorporated; (10.) Remarms, LLC, a/k/a “Remington Firearms”; (11.) Savage Arms, Inc.; (12.) Savage Arms, Inc.; (13.) Sig Sauer, Inc.; (14.) Springfield Armory, Inc.; (15.) Sturm, Ruger & Co, Inc.; (16.) SCCY Industries, LLC; (17.) Taurus Holdings, Inc., a/k/a “Taurus International Manufacturing,”; (18.) Arm or Ally, LLC; (19.) Brownells, Inc., a/k/a “Brownells” or “Bob Brownell’s”; (20.) GS Performance, LLC, a/k/a “Glockstore,” a/k/a “GSPC,” a/k/a “Double Diamond”; (21.) Indie Guns, LLC; (22.) JSD Supply; (23.) KM Tactical; (24.) Polymer80, Inc.; (25.) Primary Arms, LLC; (26.) Ranier Arms, LLC; (27.) Salvo Technologies, Inc., a/k/a “80P Building” or “80P Freedom Co.”; (28.) Rock Slide USA, LLC; (29.) Bangers, L.P. n/k/a “Iron Valley Supply Co.; (30.) Gun Center Inc., a/k/a “GC Wholesale”; (31.) RSR Group, Inc.; (32.) Vintage Firearms, LLC; and, (33.) Wolcott Guns Inc.

federal court, CM/ECF doc. 1 (01/24/2023). [This case is consolidated with the *City of Buffalo* case (see, next). The *City of Rochester* is the designated lead case. Decision and Order (Geraci, J.), doc. 119 (June 8, 2023), the claims being "essentially identical" (p.2).]

c. Regarding NY Gen Bus §898 and PLCAA, *City of Buffalo v. Smith & Wesson Brands, et al.*, W.D.N.Y. case 1:23-cv-00066, unopposed removal from state to federal court, CM/ECF doc. 1 (01/23/2023).[4]

d. Regarding NY Gen Bus §875, *Gazzola, et al.*[5] *v. Hochul*, N.D.N.Y. case 1:22-cv-1134 (Hon. Brenda K. Sannes, presiding). The undersigned is Counsel of Record for the *Gazzola* plaintiffs, as individuals (also possessing unrestricted concealed carry permits), business owners, and federally-licensed dealers in firearms (also possessing state licenses). This is the only case concerning the constitutionality of the new (eff. Dec. 5, 2022) NY Gen Bus §875 known to the undersigned counsel in federal or state court these past three years. The challenge is framed under the Second Amendment, using the novel theory of "unconstitutional regulatory over-burden," as intending to

[4] The cities of Buffalo, Rochester, and New York filed a joint Brief Amicus Curiae in support of the appellee New York Attorney General to the Second Circuit Court of Appeals afore the recently decided *NSSF v. James*, appellate docket 22-1374, doc. 116 (01/13/2023).

[5] The co-plaintiffs are: (1A.) Nadine Gazzola, individually, and as co-owner, President, and as BATFE Federal Firearms Licensee Responsible Person for Zero Tolerance Manufacturing, Inc.; (1B.) Seth Gazzola, individually, and as co-owner, Vice President, and as BATFE FFL Responsible Person for Zero Tolerance Manufacturing, Inc.; (2.) John A. Hanusik, individually, and as owner and as BATFE FFL Responsible Person for d/b/a "AGA Sales;" (3.) Jim Ingerick, individually, and as owner and as BATFE FFL Responsible Person for Ingerick's, LLC, d/b/a "Avon Gun & Hunting Supply;" (4.) Christopher Martello, individually, and as owner and as BATFE FFL Responsible Person for Performance Paintball, Inc., d/b/a "Ikkin Arms;" (5.) Michael Mastrogiovanni, individually, and as owner and as BATFE FFL Responsible Person for "Spur Shooters Supply;" (6.) Craig Serafini, individually, and as owner and as BATFE FFL Responsible Person for Upstate Guns and Ammo, LLC; and, (7.) Nick Affronti, individually, and as BATFE FFL Responsible Person for "East Side Traders LLC."

drive federally-licensed dealers in firearms out-of-business through a statute designed to be technically incapable of execution, financially overbearing, and otherwise federally preempted. The NYS Attorney General is a co-defendant in the *Gazzola* litigation, and the office is representing itself plus the other three co-defendants. The NY AGO is on notice of all aspects of the litigation, which has included significant pleadings, preliminary injunctive motion practice, and is now pending the State's motion to dismiss several claims/defendants and the Plaintiff's cross-motion for partial summary judgment with permanent injunction against enforcement of multiple subdivisions of NY Gen Bus §875 that are part of this *Bowman* case.

10. The most recent decisions in federal court that will bind analysis of this case include:

    a. *Smith & Wesson Brands, Inc.*[6], *et al. v. Estados Unidos Mexicanos*, 605 U.S. 280 (June 5, 2025), dismissed/concluded;

    b. *Nat'l Shooting Sports Foundation v. James*, 144 F.4th 98 (2d Cir. July 10, 2025), dismissed, timely to period for application for writ of certiorari to the U.S. Supreme Court; and,

    c. *Gazzola v. Hochul*, 88 F.4th 186 (2d Cir. 2023), on-going.

11. Federal statutes that will bind analysis of this case include:

    a. Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. 90-351, 82 Stat. 225, as amended by the Gun Control Act ("GCA"), Pub. L 90-618, Oct. 22, 1968, 18 Stat. 1213, as amended, 18 U.S.C. §§921, *et seq.*

---

[6] The co-defendants were (1.) Smith & Wesson Brands, Inc.; (2.) Barrett Firearms Manufacturing, Inc.; (3.) Beretta USA Corp.; (4.) Century International Arms, Inc.; (5.) Colt's Manufacturing Company, LLC; (6.) Glock, Inc.; (7.) Sturm, Ruger & Co., Inc.; and, (8.) Witmer Public Safety Group, Inc.

b. Brady Handgun Violence Prevention Act ("Brady Act"), Pub. L. 103-159, Nov. 30, 1993, 107 Stat. 1536, amending 18 U.S.C. §§921-922.

c. Firearms Owners Protection Act ("FOPA"), Pub. L. 99-308, May 19, 1986, 100 Stat. 449, amending 18 U.S.C. §921.

d. Bipartisan Safer Communities Act ("Bipartisan Act"), Pub. L. 117-159, June 25, 2022, 136 Stat. 1313.

e. The Protection of Lawful Commerce in Arms Act ("PLCAA"), 109-92, Oct. 26, 2005, 119 Stat. 2095, found at 15 U.S.C. §§7901-7903.

f. Associated ATF regulations, rulings, and guidance documents.

12. A New York state statute that will factor into this case is:

a. NY General Business Law, art. 39-BB (herein, "NY Gen Bus") (eff. Dec. 5, 2022, NY S. 4970-A, §5), particularly NY Gen Bus §875.

13. The federally-licensed dealer in firearms was born out of the 1968 Gun Control Act.[7] It is important to remember that Congress enacted the GCA after finding that "existing Federal controls over [widespread traffic in firearms moving in interstate commerce] do not adequately enable the States to control this traffic within their own borders." Pub. L. No. 90-351, Title IV ("State Firearms Control Assistance – Findings and Declaration"), § 901(a)(1), 82 Stat. 197, 225 (1968). Congress expressly found "that only through adequate Federal control over interstate and foreign commerce in these weapons and over all persons engaging in the businesses of importing, manufacturing, or dealing in them, can this grave

[7] The term "dealer in firearms," as used herein is defined at 18 U.S.C. §921(a)(11)(A), meaning "any person engaged in the business of selling firearms at wholesale or retail."

problem be properly dealt with." *Id.*, § 901(a)(3). Accordingly, Congress enacted requirements for all persons engaging in the business of, *inter alia*, dealing in firearms, on a nationwide and U.S. territorial basis. 18 U.S.C. §§ 921, *et seq*.

14. PLCAA, itself, was enacted by Congress "…in response to a spate of litigation trying to hold gun companies liable in tort for harms "caused by the misuse of firearms by third parties, including criminals."" *Smith & Wesson*, 605 U.S. at 285, citing to 15 U.S.C. §7901(a)(3) ("Findings" section). In *Smith & Wesson*, the U.S. Supreme Court very recently explained, "To curb such suits, PLCAA provides that a "qualified civil liability action," as defined in the Act, "may not be brought in any Federal or State court."" *Id.* at 285-86, citing to §7902(a). Continuing, "[t]he Act's definition of that term includes a "civil action or proceeding" against a firearms manufacturer or seller stemming from "the criminal or unlawful misuse" of a firearm by a "third party." *Id.* at 286, citing to §7903(5)(A). The "general bar" of PLCAA does have "an exception, usually called the predicate exception," which "applies to suits in which the defendant…seller "knowingly violated a State or Federal statute applicable to the sale…" of firearms, and that "violation was a proximate cause of the harm for which relief is sought."" *Id.*, citing to §7903(5)(A)(iii).

15. This *Bowman* case is the only case known to the undersigned by (a.) NY Attorney General Letitia James against (b.) (b.i.) a federally-licensed dealer in firearms, or, "FFL" of the Type-01 (federal retail license)[8], (b.ii.) who also holds a state dealer in firearms license[9],

---

[8] The undersigned counsel review of decisions referenced herein and specific complaints did not reveal references to parties' federal licenses by type. Use of words like "manufacturer" imply the FFL Type-07. Under federal law, the license type can and does have distinctions.

[9] NY PEN §400.00(2). An investigation with background check is conducted upon each state license application or renewal. NY PEN §400.00(4).

(b.iii.) with a "business premises" in New York[10], (c.)(c.i.) in reliance upon NY Gen Bus §898 (as amended, 2021) and (c.ii.) NY Gen Bus §875 (eff. Dec. 5, 2022). It is, in particular, the "b.i." FFL Type-01 federal license + "b.ii." state dealer license *in conjunction with* the "c.ii." NY Gen §875 that distinguishes this *Bowman* case from the other firearms manufacturer litigation discussed herein.

16. This *Bowman* case represents a shift from *Goliath v. Goliath* to *Goliath v. David*. The fight is migrating from state and municipal cases with multiple corporate manufacturing co-defendants (FFL Type-07) to a one-man shop with a single member LLC (FFL Type-01). Mr. Bowman is the first of the roughly 1,500 FFL-01/02s[11] with federal licenses[12] to have to defend against the NY Attorney General's experiment in NY Gen Bus §898 + §875. Her goal? To obtain judicial interpretation of §875 as a "predicate exemption" under PLCAA.

## III. FEDERAL OFFICER REMOVAL STATUTE 28 U.S.C. §1442(a)(1)

17. Under 28 U.S.C. §1442(a)(1), Mr. Bowman may remove this case because he holds an ATF-issued Federal Firearms License Type-01 for which he is the ATF Responsible Person[13].

---

[10] The term "business premises," as used herein, is defined at 27 CFR §478.11, "The property on which the manufacturing or importing of firearms or ammunition or the dealing in firearms is or will be conducted."

[11] The Type-02 is the pawnbroker license, of which there are half a dozen remaining in New York.

[12] The searchable federal license database for FFLs, updated monthly, and with historical search capability, is found at https://www.atf.gov/firearms/listing-federal-firearms-licensees. There is no (zero) New York State public-facing resource to ascertain the validity of a business claiming to have a state-issued license as a dealer in firearms.

[13] "Responsible Person" is defined by BATFE on Form 7, "Definitions," as "In addition to a Sole Proprietor, a Responsible Person is, in the case of a Corporation, Partnership, or Association, any individual possessing, directly or indirectly, the power to direct or cause the direction of management, policies, and practices of the Corporation, Partnership, or Association, insofar as they pertain to firearms."

18. The federal officer removal statute provides that any action brought against an "officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office," may be removed to federal court by the defendant. 28 U.S.C. §1442(a)(1).

19. In discussion of the history of the federal officer removal statute, the U.S. Supreme Court gave several relevant examples of the importance of the removal provision, including:

- "…the removal statute's "basic" purpose is to protect the Federal Government from the interference with its "operations" that would ensue were a State able, for example, to "arres[t]" and bring "to trial in a State cour[t] for an alleged offense against the law of the State," "officers and agents" of the Federal Government "acting ... within the scope of their authority." *Watson v. Philip Morris Co.*, 551 U.S. 142, 149 (2007), quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969) (internal quotation marks omitted).

- "State-court proceedings may reflect "local prejudice" against unpopular federal laws or federal officials. *Watson*, *id.*, quoting *Maryland v. Soper (No. 1)*, 270 U.S. 9, 32 (1926).

- "[S]tates hostile to the Federal Government may impede through delay federal revenue collection or the enforcement of other federal law." *Watson, id.*, referencing e.g., *Tennessee v. Davis*, 100 U.S. 257, 263 (1879).

- "And States may deprive federal officials of a federal forum in which to assert federal immunity defenses." *Watson, id.*, citing *Willingham*, 395 U.S. at 407.

20. "The Supreme Court has cautioned that the scope of the federal officer removal statute "is not narrow or limited."" *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014), citing *Willingham v. Morgan*, 395 U.S. at 406. The officer removal statute "as a whole must be liberally construed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 136 (2d Cir. 2008).

21. To invoke the statute, a defendant (who is not himself a federal officer) must demonstrate that "(1) the defendant is a "person" under the statute, (2) the defendant acted "under color

of federal office," and (3) the defendant has a colorable federal defense." *Cuomo*, 771 F.3d at 115, citing *Isaacson*, 517 F.3d at 135.

22. This case involves claims related to Mr. Bowman's Federal Firearms License ("FFL"). His FFL is issued and overseen by BATFE. His responsibilities are to and his interaction is primarily with BATFE, along with the FBI/FBI NICS Unit.

23. Simply stated (then annotated in the following subsections), of all types of Federal Firearms Licensees, it is the FFL-01 who is the federally-designated face of the federal government's commitment to public safety under the big, federal statutes like 1968 Gun Control Act and the 1993 Brady Act. It is the FFL-01 who is human person of direct interface between the ATF agency as a whole and the team running the FBI NICS, and the general public – which, by "the general public," is meant the law-abiding citizen seeking to exercise their Second Amendment rights as guaranteed to them as through the Fourteenth Amendment Equal Protection Clause via *Heller*[14], *McDonald*[15], and *Bruen*[16].

24. The FFL-01 bears the responsibility not only of collecting information required for the federal background check, the FFL-01 is responsible for informing a customer who is denied during the background check as a disqualified person, and for refusing to complete the requested purchase of the firearm[17]. The FFL-01 bears primary responsibility for enforcing – first and foremost – current federal law against federally-disqualified persons.

---

[14] *Dist. of Columbia v. Heller*, 554 U.S. 570 (2008).

[15] *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

[16] *New York State Rifle & Pistol Assn v. Bruen*, 597 U.S. 1 (2022).

[17] The term "firearm," as used herein, is as defined under 18 U.S.C. §921(a)(3)(A)-(B) and 27 CFR §478.11, meaning "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon." Plaintiff FFLs do not sell any firearm muffler or silencer, nor do they sell destructive devices. "Firearm," as used herein, is intended to include "shotguns" as defined under 18

25. All FFL responsibilities are executed with direct personal oversight of the ATF, generally, and the assigned Field Agent, specifically.

26. As a result of these and other federal responsibilities, Mr. Bowman "act[] under" federal "officer[s]," and the present lawsuit "relat[es] to" various "act[s] under color of [federal] office." 28 U.S.C. §1442(a)(1).

27. Mr. Bowman satisfies each requirement of the *Cuomo v. Crane* removal test.

**1. Mr. Bowman is a Person.**

28. First, Mr. Bowman is a person and the sole owner of his business. *Isaacson,* 517 F.3d at 136 ("…the ordinary presumption established in 1 U.S.C. §1 controls."). The ATF federal license to operate as a retail buyer and seller of firearms is issued to Mr. Bowman's business, and Mr. Bowman is the BATFE "Responsible Person" for the business.

**2. Mr. Bowman "Acts Under" Federal Officers.**

29. Second, the allegations of the Petition relate to his operation of his business, which is licensed first and foremost by the federal ATF. Mr. Bowman "act[s] under" federal officers by participating in and assisting with the administration and enforcement of federal firearms laws and regulations, and, as such, Plaintiff's lawsuit "relat[es] to" various "act[s] under color of [federal] office." 28 U.S.C. §1442(a)(1).

30. "Congress chose to make the dealer the "principal agent of federal enforcement" in "restricting [criminals'] access to firearms" *Abramski v. United States*, 573 U.S. 169, 186 (2014).

---

U.S.C. §921(a)(5) and 27 CFR §478.11; "Rifles" as defined under 18 U.S.C. §921(a)(7) and 27 CFR §478.11; and, "Handgun" as defined under 18 U.S.C. §921(a)(29) and 27 CFR §478.11.

31. "The words "acting under" are to be interpreted broadly, and the statute as a whole must be liberally construed. (citations omitted) "Th[e] policy [of providing the protection of a federal forum to federal officers] should not be frustrated by a narrow, grudging interpretation of §1442(a)(1)." *Isaacson*, 517 F.3d at 136 referencing *Willingham*, 395 U.S. at 407.

32. Mr. Bowman can only "engage in the business"[18] of the "acquisition and disposition"[19] of firearms if he possesses a federal, ATF-issued license, in a highly-regulated environment, overseen by the ATF. 18 U.S.C. §922(a)(1)(A) and §923(c). FFL dealers in firearms like Mr. Bowman are not merely regulated by the federal government incidental to doing business; they cannot engage in their chosen profession *at all* without applying for and obtaining the federal license (27 CFR §478.41; see ATF Form 7), maintaining the federal license (27 CFR §478.73, "Notice of revocation, suspension, or imposition of civil fine"), and renewing the federal license (27 CFR §478.45; see ATF Form 8).

33. The federal firearms license is the prerequisite to operations as a retail dealer in firearms in all fifty states and U.S. territories. The language of the first applicable provision, 27 CFR §478.41(a) spells it out: "Each person *intending to engage* in business as a … dealer in firearms <u>shall</u>, *before commencing such business,* obtain the license required by this subpart for the business to be operated." (emphasis added) These regulations originate under 18 U.S.C. §923(a), through which Congress set out: "No person shall engage in the business

[18] To "engage in the business" is defined at 27 CFR §478.13.

[19] To "acquire and dispose" is a term applying to FFLs and relates to the way a firearm enters and leaves the inventory of the FFL, including the records referred to in industry-speak as the "A&D Book," or, "the book of acquisitions and dispositions." 18 U.S.C. §923(g)(1)(A); 27 CFR §478.122, 123, and 125.

of … dealing in firearms …. *Until* he has filed an application with and received a license to do so from the Attorney General." (emphasis added)

34. A state license, even where one is required by state law, is insufficient under the universal federal mandate of all persons/businesses wishing to engage in the business of firearms acquisition and disposition requiring a federal license. The theory harkens back to the earlier-referenced findings and purpose of the 1968 Gun Control Act – the accepted belief that states cannot, on their own, properly manage firearms in the stream of interstate commerce (darkly inverted into the "marketplace of illegally-possessed firearms") so as to achieve measurable levels of public safety. In *City of New York v. Beretta U.S.A. Corp.*[20], Second Circuit Court of Appeals underscored: "We find that Congress has not exceeded its authority in this case, where there can be no question of the interstate character of the industry in question and where Congress rationally perceived a substantial effect on the industry of the litigation that the Act seeks to curtail." 524 F.3d 384, 395 (2d Cir. 2008)[21].

[20] The co-defendants in *City of New York v. Beretta* were: (1.) Beretta U.S.A. Corp.; (2.) Browning Arms Co.; (3.) Colt's Mfg. Co., Inc.; (4.) Forjas Taurus, S.A.; (5.) Glock Inc.; (6.) Phoenix Arms; (7.) Sigarms Sauer GmbH, f/k/a J.P. Sauer & Sohn Inc.; (8.) Tanfoglio Fratelli S.R.L.; (9.) Williams Shooters Supply; (10.) Walter Craig, Inc.; (11.) Valor Corp.; (12.) Sports South, Inc.; (13.) Southern Ohio Gun, Inc.; (14.) RSR Group, Inc.; (15.) Ron Shirk's Shooters' Supplies, Inc.; (16.) Riley's Inc.; (17.) Supply, Inc.; (18.) Lipsey's Inc.; (19.) Lew Horton Distribution Co.; (20.) Kiesler Police Supply Inc.; (21.) Hicks, Inc.; (22.) Glen Zanders Fur and Sporting Goods, Co.; (23.) Faber Brothers, Inc.; (24.) Euclid Avenue Sales; (25.) Ellett Brothers, Inc.; (26.) Dixie Shooters Supply, Inc.; (27.) Davidson's Supply Company, Inc.; (28.) Chattanooga Shooting Supplies; (29.) Camfour, Inc.; (30.) Brazas Sporting Arms, Inc.; (31.) Bill Hicks & Company; (32.) Bangers, L.P.; (33.) Alamo Leather Goods, Inc.; (34.) AcuSport Corporation; (35.) B.L. Jennings, Inc.; (36.) Bryco Arms, Inc.; (37.) Carl Walther GmbH; (38.) FMJ, a/k/a Full Metal Jacket; (39.) Glock GmbH; (40.) H&R 1871, Inc.; (41.) Hi-Point Firearms; (42.) Navegar, Inc., d/b/a Intratec USA, Inc.; (43.) O.F. Mossberg and Sons, Inc.; (44.) Pietro Beretta SP.A; (45.) Rossi, S.A.; (46.) John Doe Manufacturers 1-100; (47.) China North Industries Corporation, a/k/a Norinco; (48.) Remington Arms Co. Inc.; (49.) Charco 2000, Inc.; (50.) Gabilondo Y Cia; (51.) Marlin Firearms Co.; (52.) Savage Arms, Inc.; (53.) U.S. Repeating Arms Co., Inc.; and, (54.) Scott Wholesale Co., Inc.

[21] The City of New York petition for writ of certiorari was denied. U.S. Sup. Ct., No. 08-530 (Mar. 9, 2009).

35. To engage in his desired profession as a retail dealer in firearms and gunsmith in his community, Mr. Bowman has been required to obtain, maintain, and achieve triennial renewal his federal FFL Type-01 license through the BATFE. He has done so. The State was already on notice of the same in *Bowman I* in state court. It did not challenge those allegations in the *Bowman v. James* case, and it did not make contrary allegations in this new *Bowman* case.

36. To shoulder "joint responsibilities" of the federal government, Federal Firearms Licensees, including Mr. Bowman, perform, for example, but far from limited to, the following under color of federal law and regulation:

   a. Deny the transfer of a firearm to a disqualified person who fails the federal firearms background check via FBI NICS through a "DENY" status. E.g., 18 U.S.C. §922(d); 27 CFR §478.99(c) ("Sales or deliveries to prohibited categories of persons").

   b. Stop any person under the age of eighteen years from purchasing any firearm, and any person between the ages of eighteen and twenty-one years of purchasing other than a shotgun or rifle or ammunition for a shotgun or rifle. 18 U.S.C. §922(b).

   c. Alert the ATF to sales or other dispositions of two or more pistols and revolvers to the same unlicensed person (meaning, without an FFL), including copying in the state police or local law enforcement. 18 U.S.C. §923(g)(3)(A); 27 CFR §478.126a; ATF Form 3310.4.

   d. Inspect firearms for a legally-compliant serial number, which has not been removed, obliterated, or altered. 18 U.S. §922(k); 27 CFR §478.34.

e. Engage in creation and maintenance of regulatorily-detailed records of firearm acquisitions and dispositions into and out of business inventory, primarily to support gun trace obligations of the BATFE. 18 U.S.C. §923(g)(1)(A); 27 CFR §§478.101, 27 CFR Subpart H (“Records”) of §§478.121-478.134.

f. Report theft, loss, and recovery of firearms in inventory to the ATF/FBI by telephone and in written form, including as required to appropriate local authorities. 18 U.S.C. §923(g)(6): 27 CFR §478.39a; ATF Form 3310.11.

g. Respond to federal ATF National Trace Center officials with trace of firearms “immediately” and “in no event later than 24 hours after the receipt of the request.” 18 U.S.C. §923(g)(1)(B); 27 CFR §478.23(b)(2)(ii); 27 CFR §478.25a.

h. Submit to ATF rights of entry and examination, including on-site inspections and inventory reconciliation. 27 CFR §478.23.

37. Aptly phrased by the U.S. Supreme Court, “it is apparent that the focus of the federal scheme is the federally licensed firearms dealer, at least insofar as the Act directly controls access to weapons by users.” *Huddleston v. United States*, 415 U.S. 814, 825 (1974).

38. FFL Type-01 retail dealers in firearms, like Mr. Bowman, are the front line of crime-prevention and law-enforcement on behalf of the ATF and the FBI. As underscored by the nation’s high court, “The principal agent of federal enforcement is the dealer. He is licensed, §§921(a)(1) and 923(a); he is required to keep records of ‘sale…or other disposition,’ §923(g); and he is subject to a criminal penalty for disposing of a weapon contrary to the provisions of the Act, §924.” *Huddleston*, 415 U.S. at 824 (1974).

39. Mr. Bowman and other FFL-01s across the industry are required to work "hand-in-hand" with the ATF and the FBI to "achieve" federal objectives through recordkeeping, reporting, and law-enforcement assistance – actions "the government would otherwise have had to perform itself." *Agyin v. Razmzan*, 986 F.3d 168, 178 (2d Cir. 2021).

40. Mr. Bowman shares a "special relationship" with the federal government that solidifies removal under §1442(a)(1). It is a relationship that amounts to more than mere regulation of advertising or reporting of test results. *Watson*, 551 U.S. at 157.

41. A court must give the language of 28 U.S.C. §1442(a)(1) "a broad construction – particularly with respect to private parties who claim to be 'acting under' a federal officer." *Agyin*, 986 F.3d at 178. And it "must credit the defendants' theory of the case when evaluating the relationship between the defendants' actions and the federal officer." *Id.* (internal quotation marks and alteration omitted). An entity that makes "effort[s] to *assist*, or to help *carry out*, the duties or tasks of the federal superior" satisfies this requirement. *Watson*, 551 U.S. at 152 (emphasis in original). In other words, Mr. Bowman "perform[s] a job that … the federal government would [otherwise] have had to perform itself." *Id*. at 175.

42. Under the Biden Administration, an ATF guidance document explained well the role of the FFL, including:

> "Federal firearms licensees (FFL) are critical partners in promoting public safety because – among other things – they help keep firearms out of the hands of prohibited persons by running background checks on potential firearms purchasers, ensure that guns used in crimes can be traced back to their first retail purchaser by keeping records of transactions and facilitate safe storage of firearms by providing child safety locks with every transferred handgun and having secure gun storage or safety locks available any place where they sell firearms."

> "Do I need a License to Buy and Sell Firearms: Guidance to help you understand when a Federal Firearms License is required under federal law," BATFE (ver. 05/2024), p. 9.[22]

43. And, earlier, as the ATF put forth to its dealers:

> "I am writing to you to emphasize the importance of the partnerships that have been established between ATF and the firearms industry and to reinforce our joint responsibilities under the Gun Control Act (GCA). Your compliance with these obligations is critical to the prevention of terrorism, firearms trafficking, and other related criminal activities. In turn, ATF is dedicated to helping you fulfill these duties, thereby making our communities safer." *Open Letter to all Federal Firearms Licensees,* BATFE (Jan. 14, 2004), p.1.

44. Plaintiff's suit plainly "relat[es] to … act[s] under color of federal] office." 28 U.S.C. §1442(a)(1). "The hurdle erected by this requirement is quite low," ""[i]t is enough that his acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution."" *Isaacson*, 517 F.3d at 137, quoting *Soper (No. 1)*, 270 U.S. at 33.

### 3. Mr. Bowman Possesses a "Colorable Federal Defense."

45. Third, Mr. Bowman possesses a "colorable federal defense(s)," including, but not limited to, under the "Protection of Lawful Commerce in Arms Act" ("PLCAA"). 15 U.S.C. §§7901-7903.

46. To be "colorable," "the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." *Isaacson*, 517 F.3d at 139, quoting *Willingham*, 395 U.S. at 407. Accordingly, "[c]ourts have imposed few limitations on what qualifies as a colorable federal defense." *Id.* at 138.

---

[22] Available on the ATF website at https://www.atf.gov/file/192646/download.

47. As Second Circuit Court of Appeals Judge Jacobs very recently expressed in his concurrence in the *National Shooting Sports Federation* decision on a facial challenge to NY Gen Bus §898:

> "With the Protection of Lawful Commerce in Arms Act ("PLCAA") (citation omitted), Congress shut the door on litigation that would destroy the nation's firearms industry. New York has now contrived a broad public nuisance statute that applies solely to "gun industry members" and is enforceable by a mob of public and private actors. The intent of Congress when it closes a door is not for States to thus jimmy a window." *NSSF v. James*, 144 F.4th at 118 (Jacobs, J., concurring).

48. Judge Jacobs underscored the importance of the PLCAA federal defense in the specific context of the state government's drive to put the federal firearms industry out-of-business when he stated:

> "This law is nothing short of an attempt to end-run PLCAA. I know that because then-Governor Cuomo used his signing statement to tell the public that Section 898 would "right the wrong" done by PLCAA. *See* Governor Andrew M. Cuomo, Governor Cuomo Signs First-in-the-Nation Gun Violence Disaster Emergency to Build a Safer New York at 35.11-35.50." *Id.* at 120 n.1 (Jacobs, J., concurring).[23]

49. It is not only Judge Jacobs calling attention to this approach of suing companies instead of suing the actual criminals. The U.S. Supreme Court in *Twitter* included the pointed remark:

---

[23] See, also, NY Attorney General, Press Rel. (July 6, 2021), "Attorney General James' Statement on New Law That Allows NYS to Hold Gun Manufacturers Responsible for Gun Violence," including "In 2005, Congress took unprecedented action to usurp states' rights and give gun manufacturers and distributors blanket immunity for gun violence perpetrated as a direct result of their marketing and distribution of firearms. Plain and simple, this was federal overreach to protect the gun industry in every way possible. But, today, New York state took an important step to right that wrong and protect its citizens from gun violence. As the state's attorney and chief law enforcement officer, I look forward to enforcing the Public Nuisance law and I stand ready to defend it against all legal challenges." This 2021 NY-AG press release – still on the official NY government website – flouts the 2008 Second Circuit Court of Appeals ruling in *Beretta*, which, in relevant part confirmed the District Court ruling, that on all constitutional grounds asserted by the City of New York "[t]here is no violation of the United States Constitution." 424 F.3d at 392-393.

"But plaintiffs are not suing ISIS. Instead, they have brought suit against three of the largest social-media companies in the world…" *Twitter v. Taamneh*, 598 U.S. 471, 477 (2023).

50. The nation's high court is singing this refrain, as well. In the words of Justice Kagan, for a unanimous U.S. Supreme Court, in *Smith & Wesson*:

> "And that conclusion, we note, well accords with PLCAA's core purpose. Recall that Congress enacted the statute to halt a flurry of lawsuits attempting to make gun manufacturers pay for the downstream harms resulting from misuse of their products. (internal citation omitted) In a "findings" and "purposes" section, Congress explained that PLCAA was meant to stop those suits – to prevent manufacturers (and sellers) from being held "liable for the harm caused by those who criminally or unlawfully misuse firearm[s]." §7901(a)(5). Mexico's suit closely resembles the ones Congress had in mind: It seeks to recover from American firearms manufacturers for the downstream damage Mexican cartel members wreak with their guns." 605 U.S. at 298-99.

51. Plaintiff's suit qualifies for this important PLCAA defense. It is a "civil action…brought by any person against a manufacturer or seller of [firearms], … for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a [firearm] by the person or a third party." 16 U.S.C. §7903(5)(A).

52. <u>Brought by any person</u>. The NY Attorney General's Office filed the case for "the People of the State of New York." Pet., ¶12.

53. <u>Against a seller of firearms</u>. Mr. Bowman is a federally-licensed (and NY-licensed) dealer in firearms of the federal Type-01. He also holds a state license as a dealer in firearms. [He further holds a state license as a gunsmith, which was not referenced in the State's case. At federal law, only one license is required for the retail and the gunsmithing services.] The State's allegations concerning Mr. Bowman and his business are at Pet., ¶¶13-14.

54. For damages. The "Notice of Verified Petition" and the *ad damnum* clause of the "Verified Petition" seek damages, including injunctive relief (Notice, ¶1, ¶2; Pet. ¶1) and disgorgement (Notice, ¶4; Pet. ¶3).

55. Resulting from the criminal or unlawful misuse of a firearm by the person or a third party. The Petition includes one, vague, unspecified harm alleged against Mr. Bowman of firearms "being diverted into the illegal marketplace." Pet. ¶15. This panoply "harm" was alleged by the City of New York in *Beretta* and was dismissed in 2008. 524 F.3d at 388. It was also pleaded by Mexico in *Smith & Wesson*. 605 U.S. at 289, a case also dismissed. It is an amorphous phrase, at best, and meaningless, at worst.

56. The U.S. Supreme Court in *Twitter v. Taamneh*, 598 U.S. 471, 501-02 (2023), found insufficient the use even of one attack location amidst many, explaining,

> "Given the lack of any concrete nexus between defendants' services and the Reina [Nightclub] attack, plaintiffs' claims would necessarily hold defendants liable as having aided and abetted each and every ISIS terrorist act committed anywhere in the world. … These allegations are thus a far cry from the type of pervasive, systemic, and culpable assistance to a series of terrorist activities that could be described as aiding and abetting each terrorist act."

Within *Twitter*, the U.S. Supreme Court set out the standard that "[T]he more attenuated the nexus, the more courts should demand that plaintiffs show culpable participation through intentional aid that substantially furthered the tort." *Id.* at 506. The nation's high court applied that fulcrum, finding: "Yet plaintiffs have failed to allege that defendants intentionally provided any substantial aid to the Reina attack or otherwise consciously participated in the Reina attack – much less that defendants so pervasively and systematically assisted ISIS as to render them liable for every ISIS attack." *Id.*

57. This *Bowman* case represents a pleading further afield even than *Beretta* and *Twitter*. The Petition "sets for itself a high bar" that "heighten[s] [the Plaintiff's] burden." *Smith & Wesson*, 605 U.S. at 282. The NY AG seeks, *inter alia*, to hold Mr. Bowman liable for being the victim of criminals convicted of robbing his store in 2019 and 2020. The NY AG's Petition did not say the names of the men convicted of these crimes *against* Mr. Bowman. NY AG James did not sue *them*, did not prosecute *them*, did not make a press release about *them* – as the AG and AAGs listed on the attached Petition is now doing to Mr. Bowman, including their official NY Attorney General Press Release published against Mr. Bowman on July 18, 2025, ahead even of his being served with the attached Petition.

58. On a more positive note, following both robberies, it was Mr. Bowman's federal partners, who respected and worked with him to achieve convictions, sentencing, partial restitution, and firearms recovery, including the men and women of the ATF, the FBI, the federal prosecutors' office, and the U.S. Army.

59. The recentness of decisions like *Smith & Wesson* (June 5, 2025), *NSSF v. James* (July 10, 2025), and *Twitter* (2023) – all focusing on either NY Gen Bus §898, specifically, or comparable statutes, underscores the importance of federal court involvement, particularly where it involves federally-licensed dealers such as Mr. Bowman. Mr. Bowman should "retain [his] PLCAA-granted immunity." *Smith & Wesson*, 605 U.S. at 299.

## IV. SUBSTANTIAL FEDERAL QUESTION 28 U.S.C. §1331

60. Defendant's second, or, alternative basis for removal is that Plaintiff's claims raise one or more substantial federal questions and, therefore, provide original federal question jurisdiction. 28 U.S.C. §1331.

61. There is something called the "predicate exception" to the federal PLCAA defense. Whether the State pleading NY Gen Bus §898 + the new NY Gen Bus §875 will satisfy the rigorous requirements of serving as a "predicate exemption" to PLCAA raises multiple, substantial federal questions the Plaintiffs will have the burden to satisfy.

62. What the U.S. Supreme Court made abundantly clear through its most recent *Smith & Wesson* decision is that "The predicate exception allows for accomplice liability only when a plaintiff makes a plausible allegation that a gun manufacturer "participate[d] in" a firearms violation "as in something that [it] wishe[d] to bring about" and sought to make succeed." 605 U.S. at 299 (emphasis added), citing to *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938).

63. The necessary allegations to satisfy the predicate exception not appearing within the four corners of the Petition, less space is allotted to this argument.

64. This Court has jurisdiction over claims that "arise[] under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331.

65. "Under [U.S. Supreme Court] interpretations, Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983).

66. The well-pleaded complaint rule has a corollary known as "the artful pleading rule," pursuant to which a plaintiff cannot avoid removal. The corollary is well set out within *Romano v. Kazocos*, 609 F.3d 512, 518-19 (2d Cir. 2010), as follows:

> "Under the well-pleaded complaint rule, then, plaintiff is the master of his complaint and is free to avoid federal jurisdiction by "pleading only state claims even where a federal claim is also available." However, there exists a corollary to the well-pleaded complaint rule – the "artful pleading" rule – pursuant to which plaintiff cannot avoid removal by declining to plead "necessary federal questions." If the artful pleading rule applies, courts look beyond the face of an "artfully pled" complaint to determine whether plaintiff has "cloth[ed] a federal law claim in state garb" by pleading state law claims that actually arise under federal law. If such is the case, the reviewing court will "uphold removal even though no federal question appears on the face of the complaint." (internal citations omitted)

67. "There is…another longstanding, if less frequently encountered, variety of federal "arising under" jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005). As the U.S. Supreme Court explained, the substantial federal question doctrine "captures the common sense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* at 313.

68. "As one treatise puts it, courts "will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum..."" *Fed. Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) (citation omitted).

69. The U.S. Supreme Court, in calling its "special and small category" of cases arising under this jurisdiction as "unfortunately" looking like a canvas "that Jackson Pollock got to first," did state that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

70. The Southern District of New York Court ruled in a case involving similar claims brought by Plaintiff against a federally-licensed firearms manufacturer that removal of that case to federal court was proper under the *Gunn-Grable* test. *New York v. Arm or Ally, LLC*[24]*,* 644 F.Supp.3d 70 (S.D.N.Y. Dec. 8, 2022).

**1. It is Necessarily to Raise that a State Attorney General is Attempting to Usurp the Jurisdiction and Authority of the U.S. Attorney General Concerning a Federally-Licensed Dealer in Firearms, and that the State Attorney General is Lacking Even State Authority for Her Actions.**

71. Although a state attorney general, Plaintiff NYS AG frames the case against Mr. Bowman using allegations as to matters within the exclusive federal jurisdiction of the ATF and the United States Attorney General.

72. Plaintiff's Petition fall neatly into two categories: alleged events *before* and alleged events *after* a statutory debarkation point. The statutory bright line is December 5, 2022, which was the effective date of NY Gen Bus §875. Any event alleged prior to that date is bound by

[24] The *New York v. Arm or Ally* co-defendants are (1.) Arm or Ally, LLC; (2.) Blackhawk Manufacturing Group, Inc. a/k/a 80 Percent Arms, Inc. or 80 Percent Arms; (3.) Salvo Technologies, Inc. a/k/a 80p Building or 80p Freedom Co.; (4.) Brownells, Inc., a/k/a Brownells or Bob Brownell's; (5.) GS Performance, LLC, a/k/a Glockstore or GSPC; (6.) Indie Guns, LLC; (7.) KM Tactical; (8.) Primary Arms, LLC; (9.) Rainier Arms, LLC; and, (10.) Rock Slide USA, LLC. 644 F.Supp.3d at 73 n.1.

the dismissal of *Beretta* and is otherwise lacking standing as a state attorney general over federal laws governing the conduct of a federal licensee.

73. Alleged events that occurred prior to the effective date of NY Gen Bus §875, or, December 5, 2022, are dated 2014 (Pet., ¶29), April 2019 (Pet., ¶30), September 2019 (Pet. ¶31), September 2020 (Pet. ¶¶32-34), and an undated allegation concerning federal records (Pet. ¶35).

74. Those pre-12/5/2022 allegations can <u>only</u> be evaluated under federal laws (to be determined, if any, and otherwise unspecified in the pleading) because there were no state equivalent or related statute(s) in existence at that time. The only statutory standard by which Mr. Bowman's performance can be evaluated prior to December 5, 2022 is under his federal ATF license, which is governed by federal law, ATF-promulgated regulations, BATFE, and the U.S. Department of Justice under the U.S. Attorney General.

75. "And that is so even if the company could adopt measures to reduce their users' down-stream crimes." *Smith & Wesson*, 605 U.S. at 293, citing *Twitter*, 598 U.S. at 503. "Passive nonfeasance," or, "omissions" and "inactions" – especially in an already highly regulated industry – are rarely the stuff of aiding-and-abetting liability…" *Id*. at 282.

76. The State of New York, itself, did not get dynamically involved with its newly-minted state-licensed dealers in firearms for more than ten years after it created the state license.

77. Although there became a New York state dealer license requirement, circa 2011, it has been a "state" "license" in name, only. NY PEN §400.00(1). It amounted to not much more than filling out a county-provided form, consenting to a background check, and paying a fee through the local county clerk's office. There remains no established state regulatory body,

nor development and promulgation of state regulations, nor administrative law processes in state court for monitoring or suspending or revoking the state license.

78. To illustrate how bereft New York State has been towards its "state-licensed dealers in firearms," there remains to this date no state-mandated criteria to achieve a state "license" as a dealer in firearms, nor to terminate it. There is no New York state statutory criteria for suspension or revocation of a state "license" as a dealer in firearms. NY PEN §400.00(11) ("…may be revoked and cancelled *at any time*…) (emphasis added). And there is no state or county level statutory process to suspend or revoke a state "license" as a dealer in firearms, including that no notice need be given to the licensee. NY PEN §400.00(11) ("The official revoking a license shall give written notice thereof without unnecessary delay *to* the executive department, division of state police, Albany, and shall also notify immediately the duly constituted police authorities of the locality." (emphasis added) (*N.B.*: There is not even a written notice requirement to the licensee.)

79. Not only does this case raise questions of a state attorney general trying to operate in federal attorney general space, it raises questions of the authority of the state attorney general under the new state law, as well. The only penalty for an alleged violation of NY Gen Bus §875 is found under NY Gen Bus §875-i and that is for the NYS Police Superintendent to bring a criminal misdemeanor charge. For the NYS Attorney General to become involved to prosecute an §875 case, the NYS Police Superintendent would have to send a written request to her. NY EXE §63(3); *People v. Gilmour*, 98 N.Y.2d 126, 133 (2022); *People v. Wassell*, 2019 NY Slip Op 03187 (NY App. Div., 4th Dept., 2019). The matter is otherwise a county district attorney event. Either way, absent from the Petition is any criminal charge or

conviction of Mr. Bowman under NY Gen Bus §875-i. This case is an attempt by the NY Attorney General to get around PLCAA and around more than one state law(s).

80. The Petition also raises the question how the State Attorney General will explain trying to subvert Mr. Bowman's, *inter alia*, due process rights through this civil proceeding.

81. On June 10, 2025 in the *Smith & Wesson* case, the Honorable Justice Clarence Thomas, in his concurring opinion, foretold the perils now faced by Mr. Bowman in this case, as follows:

> "Allowing plaintiffs to proffer mere allegations of a predicate violation would force many defendants in PLCAA litigation to litigate their criminal guilt in a civil proceeding, without the full panoply of protections that we otherwise afford to criminal defendants. And, these defendants might even include ones who were *cleared* in an earlier proceeding, such as through a noncharging decision or a not-guilty or not-liable verdict. Such collateral adjudication would be at best highly unusual, and would likely raise serious constitutional questions that would counsel in favor of narrower interpretations." (italicized emphasis in original) (underline emphasis added) (citation omitted)

82. There are no allegations in the Petition that Mr. Bowman was convicted in federal or state court. No allegations he faces no charges. No allegations Mr. Bowman is a disqualified person at federal law (18 U.S.C. §922(g)), or that he has failed a background check for any one of this four firearms-related licenses[25], each of which is renewed on a triennial basis, in different dates and years, and all of which are current.

---

[25] Mr. Bowman's fourth firearms-related license is his unrestricted concealed carry permit. NY PEN §400.00(2). The "state" license must be renewed every three years. NY PEN §400.00(10). An investigation with background check is conducted of Petitioner upon each license application or renewal submission. NY PEN §400.00(4).

83. The State's Petition actively omits all federal references it didn't want or know how to plead around, which amount to the substantial, federal questions that will have to be addressed and proven for the case to advance.

84. This Plaintiff's Petition, in reality, presents substantial questions of whether a state attorney general can pursue alleged violations of federal law and regulation against a Federal Firearms Licensee, such as Mr. Bowman.

85. This Plaintiff's Petition presents substantial questions of whether a state attorney general can usurp, retroactively, the role and authority of the BATFE and the U.S. DOJ in a "civil" proceeding for allegedly "illegal" conduct under federal law that occurred between the 1968 GCA[26] and the December 5, 2022 date (or later).

86. Plaintiff's Petition also presents, *inter alia*, substantial questions of whether a state attorney general can *ex post facto* exact punishment against a Federal Firearms Licensee using federal law, including where the federal authority with jurisdiction has timely performed their federal protocols at and with the federally-licensed dealer.

87. The Plaintiff's Petition also creates substantial questions of federal law relative to the new NY Gen Bus §875 and whether it can serve as a predicate exception under PLCAA, particularly given that the remedy for violation under §875-i belongs to the NYS Police (not the NYS Attorney General), making this manner of civil pursuit the equivalent of a criminal trial without criminal rights.

88. Each of these and additional questions correlate to substantial federal constitutional questions, starting with basic rights of Due Process and graduating to the individual Second

---

[26] An impact implied, if the court finds the state can take such actions against an FFL.

Amendment rights of Mr. Bowman and his customers, through the Equal Protection Clause of the Fourteenth Amendment.

**2. Actual Dispute Concerning Federal and State Law Violations Alleged by the NY Attorney General.**

89. This *Bowman* case is not a theoretical pre-emption (facial) challenge. This case will require analysis and application of several federal statutes and regulations relating to FFLs, like Mr. Bowman, starting from the allegations of a state attorney general, and including correction of grave misrepresentations. *Once and for all.*

90. This is not the first time Mr. Bowman has heard multiple of these false allegations from the NYS Attorney General's Office.

91. Mr. Bowman is the plaintiff in *Bowman v. James*, currently on appeal in the NYS Appellate Division, Third Department, on his motion to quash extra-judicial subpoenas he received from the NY AGO in 2024. The NYS Supreme Court record includes, in support of his requested relief, explicit, detailed affidavits, affirmations, and records, in admissible form. Mr. Bowman's submission of facts was unchallenged by the State. The presiding judge found his request to be moot by virtue of effort made by Mr. Bowman to respond to communication from a NY AAG, prior to his obtaining legal representation. Decision & Order, Farley, J., Sup. Ct. (St. Lawrence Co.), EFCF-24-167057, doc. 47 (04/08/2025).

92. There is a similar case in the adjoining county within N.D.N.Y. for which the undersigned also represents the plaintiffs, namely, *Blue Line Sports v. James*, Franklin County Sup. Ct. Index No. E2024-789 (Ellis, J., presiding). The *Blue Line Sports* plaintiffs hired the undersigned to respond upon receipt of the extra-judicial subpoenas, and motions to quash were promptly filed. To the best knowledge of the undersigned, these are the only NY AG

extra-judicial subpoenas issued to FFLs with state licenses referencing NY Gen Bus §875 and the only cases on point.

93. The *Bowman v. James* case and the *Blue Line Sports v. James* case question the authority of the NY Attorney General under NY EXE §§63(3), 63(12) to issue extra-judicial subpoenas to FFLs requesting records under NY Gen Bus §875, given that the state legislature afforded no such authority, putting that responsibility solely within the assignment of the Division of NYSP. These cases reflect one specific legal question, determinable in state court.

94. Because this is a "Notice of Removal," Mr. Bowman reserves all standard rights to challenge all "factual allegations" made by the NY Attorney General through his future motion to dismiss, pleading, defenses, discovery, evidentiary submissions, and so forth.

### 3. This Case is Capable of Resolution in Federal Court Without Disrupting the Federal-State Balance Approved by Congress.

95. The 1968 Gun Control Act defined a federal-state balance that worked well from 1968 through 2022 – more than fifty years. *Beretta* confirmed the constitutionality of PLCAA from 2005 in the Second Circuit, as did other courts around the country in the twenty years since. The Brady Act automated the ATF Form 4473 as of 1998, and it, to, worked well through 2022 – more than twenty years. Most recently, the Bipartisan Safer Communities Act made mandatory the submission and annual certification of federal records to the FBI NICS relevant to "disqualified person" status.

96. Any allegations made by a state attorney general using federal law and regulations against a Federal Firearms Licensee is necessary to be decided by a federal court not only to *preserve* the federal-state balance, but to *restore* the federal-state balance, including, but not limited

to, under the Supremacy Clause to the U.S. Constitution. U.S. Const. art. VI, cl. 2 (providing that federal law "shall be the supreme Law of the Land.")

97. The case of *Tennessee v. Davis*, though from 1879, so well expresses that the federal and state sovereigns are distinct entities, and that in certain instances the federal government will take the lead, including through removal of a case from state into federal court. It states in part:

> "Before the adoption of the Constitution, each State had complete and exclusive authority to administer by its courts all the law, civil and criminal, which existed within its borders. Its judicial power extended over every legal question that could arise. But when the Constitution was adopted, a portion of that judicial power became vested in the new government created, and so far as thus vested it was withdrawn from the sovereignty of the State. Now the execution and enforcement of the laws of the United States, and the judicial determination of questions arising under them, are confided to another sovereign, and to that extent the sovereignty of the State is restricted. The removal of cases arising under those laws, from State into Federal courts, is therefore, no invasion of State domain. On the contrary, a denial of the right of the general government to remove them, to take charge of and try any case arising under the Constitution or laws of the United States, is a denial of the conceded sovereignty of that government over a subject expressly committed to it." 100 U.S. at 267.

98. For more than fifty years, there was a balance between federal and state/local government and law enforcement actors, in conjunction with federally-licensed dealers in firearms.

99. This *Bowman* case is the first known case attempted to be brought by a state attorney general (who may have no federal or state legal authority to act) against a federally-licensed dealer in firearms (FFL-01) through a creative effort to notch into a "predicate exemption" of PLCAA via (a.) a retroactive, *ex post facto*, application of federal law and regulations that belongs to the ATF and the U.S. Attorney General; and, (b.) NY Gen Bus §§898 + 875 (which may, itself, through *Gazzola v. Hochul* be determined to be unconstitutional and

subject to permanent injunction) – all in the absence of any allegation of federal or state criminal charge against Mr. Bowman, no allegation of participation in a firearms violation as something he wished to bring about to sought to make succeed, and with no allegations of specific harm or nexus.

100. The saving grace of this "Notice" is that in the past four years, with respect to the U.S. Supreme Court and the Second Circuit Court of Appeals, the stage has been set for this *Bowman* case to be determined in federal court, beginning in the Northern District Court.

## CONCLUSION

101. This action may be removed by Defendant pursuant to 28 U.S.C. §§1442(a)(1) and 1331. Removal to the U.S. District Court for the Northern District of New York is proper because it includes St. Lawrence County, where Defendant resides and has his business premises.

102. Promptly upon the filing of this "Notice of Removal," Mr. Bowman shall cause through his Counsel a copy to file with the Clerk of the St. Lawrence County Supreme Court and to serve a copy of it upon Plaintiff.

**WHEREFORE**, Defendant hereby removes this action from the St. Lawrence County Supreme Court to the Northern District Court of New York.

Dated: August 21, 2023

Respectfully Submitted,

*Paloma A. Capanna*

Paloma A. Capanna, Attorney
106-B Professional Park Drive
Beaufort, North Carolina 28516
(252) 515-3676