SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ST. LAWRENCE

---

PEOPLE OF THE STATE OF NEW YORK by LETITIA
JAMES, Attorney General of the State of New York,

         Petitioner,

      -against-

BOWMAN'S GUN SHOP, LLC; and TIMOTHY BOWMAN,

         Respondents.

---

**NOTICE OF
VERIFIED
PETITION**

  **PLEASE TAKE NOTICE,** upon the annexed Verified Petition of the People of the State

of New York, dated July 17, 2025, the affirmation of Martha Grieco, Esq., attorney at law in

support of the Petition and any exhibits thereto, an application will be made to this Court at the

Supreme Court, 48 Court Street, Canton, New York at 9:30 a.m. on August 8, 2025 or as soon

thereafter as counsel may be heard, for relief pursuant to Section 63(12) of the Executive Law

for an order and judgment:

1. Permanently enjoining Respondents and any other entity through which they may

act from being engaged in the business of dealing firearms;

2. In the alternative, issuing a permanent injunction requiring Respondents to

comply with New York State law, by:

 a. Creating a written security plan that describes physical security measures,

electronic security measures, and operational security measures, including

provisions for securing all firearms, rifles, and shotguns outside of business hours;

FILED: ST. LAWRENCE COUNTY CLERK 07/18/2025 09:28 AM INDEX NO. EFCV-25-168235
NYSCEF DOC. NO. 2 RECEIVED NYSCEF: 07/18/2025

Case 8:25-cv-01131-MAD-DJS    Document 1-1    Filed 08/21/25    Page 2 of 21

    b.  Purchasing gun safes or otherwise secure the guns inside the store after business hours, such as by installing cord locks for long guns and secure, locked display cases for handguns;

    c.  Storing ammunition separately from firearms, rifles, and shotguns, and out of the reach of customers;

    d.  Maintaining a video surveillance system and security alarm system and devising a manner of maintaining video recordings for no less than two years;

    e.  Creating an employee handbook that, at a minimum, satisfies the security plan requirements of General Business Law § 875-a *et seq* and describes the security practices of the store, policies to prevent diversion of firearms, and inventory practices;

    f.  Requiring that any person who performs any tasks related to the purchase of firearms, rifles, shotguns, or ammunition on behalf of Bowman's Gun Shop attend or review the training course offered by New York State Police for gun dealers and their employees;

    g.  Requiring that any person who performs any tasks related to the purchase of firearms, rifles, shotguns, or ammunition on behalf of Respondents is provided with a copy of the employee handbook referenced above and certifies in writing that they have received and read the handbook; and

    h.  Providing that violations of such injunction shall be punishable by awarding liquidated damages of $5,000 per violation and requiring the Respondents to post a bond of not less than $50,000 against future violations of New York State law;

3.     Requiring that Respondents prepare an accounting of all profits made on sales of firearms and ammunition from July 6, 2021, until the date of resolution of this action, including: (i) Respondents' acquisition and disposition books; (ii) the wholesale price that Respondents paid for each product; (iii) the retail price for which the product sold; (iv) the number units of the product; (v) profits earned from each product; and (vi) Respondents' bank records for the relevant time period;

4.     Disgorgement of all profits made on sales of firearms and ammunition from June 2024 until the date of resolution of this action;

5.     Awarding the State costs and disbursements of this action, including additional costs in the amount of $4,000, pursuant to CPLR § 8303(a)(6); and

6.     Granting the State such other and further relief as this Court deems just and proper.

PLEASE TAKE FURTHER NOTICE that, pursuant to CPLR § 7804(c), answering papers, if any, shall be served upon the undersigned no later than seven (7) days before the return date, and reply papers, if any, shall be served at least one (1) day before the return date.

Dated: New York, New York
July 17, 2025

LETITIA JAMES
Attorney General of State of New York

By: Deanna R. Nelson
*Assistant Attorney General In Charge*
Dulles State Office Building
317 Washington Street
Watertown, NY 13601

FILED: ST. LAWRENCE COUNTY CLERK 07/18/2025 09:28 AM
INDEX NO. EFCV-25-168235
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 07/18/2025

Case 8:25-cv-01131-MAD-DJS    Document 1-1    Filed 08/21/25    Page 4 of 21

315-523-6080
Deanna.Nelson@ag.ny.gov

Molly Thomas-Jensen
Monica Hanna
*Special Counsel*
Martha Grieco
*Assistant Attorney General*
28 Liberty Street
New York, NY 10005
212-416-8679
Monica.Hanna@ag.ny.gov
Molly.Thomas-Jensen@ag.ny.gov
Martha.Grieco@ag.ny.gov

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ST. LAWRENCE

---

PEOPLE OF THE STATE OF NEW YORK by LETITIA
JAMES, Attorney General of the State of New York,

                            Petitioner,

                      -against-

BOWMAN'S GUN SHOP, LLC; and TIMOTHY BOWMAN,

                        Respondents.

**VERIFIED
PETITION**

---

     The People of the State of New York, by their attorney Letitia James, Attorney General of

the State of New York, allege the following:

## INTRODUCTION

     1.     Respondent Bowman's Gun Shop, LLC is a licensed gun dealer located in

Gouverneur, New York, that sells guns, hunting supplies, and ammunition. Respondent Timothy

Bowman is the sole owner and primary operator of Bowman's Gun Shop.

     2.     State law regulates numerous aspects of the sale and storage of Bowman's Gun

Shop's primary products—guns and ammunition.

     3.     For years, Bowman's Gun Shop has engaged in sales practices that violate state

safety requirements.  Mr. Bowman has not adjusted his sales practices to achieve or maintain

compliance with changes in State law.  Moreover, despite preventing illegal diversion being

among the responsibilities of a licensed firearms dealer, Mr. Bowman admits he does not know

what indicators suggest that someone is engaging in a straw purchase, i.e., illegally purchasing a

gun on behalf of another person.

1

FILED: ST. LAWRENCE COUNTY CLERK 07/18/2025 09:28 AM   INDEX NO. EFCV-25-168235
NYSCEF DOC. NO. 1                                       RECEIVED NYSCEF: 07/18/2025

Case 8:25-cv-01131-MAD-DJS   Document 1-1   Filed 08/21/25   Page 6 of 21

4.      Bowman's Gun Shop also has a history of storing its products in an unsafe manner that has facilitated theft.

5.      Mr. Bowman had, until recently, a pattern of neglecting to arm the security system on Bowman's Gun Shop.

6.      Bowman's Gun Shop does not store its inventory of guns securely after hours, as State law requires.

7.      Bowman's Gun Shop does not store its ammunition out of reach of consumers, as State law also requires.

8.      Bowman's Gun Shop does not have a security plan, in violation of State law.

9.      The consequences of Bowman's Gun Shop's noncompliant sales and storage practices have been felt in communities far away from Gouverneur. Twice in just over a year, Bowman's Gun Shop was burglarized. In September 2019, the back door of the shop was forced open, and seven guns and dozens of boxes of ammunition were stolen. In September 2020, burglars entered the shop through a window that was unlocked and ajar. Forty handguns and eleven long guns were stolen. Police departments from as far away as Barbados contacted the New York State Police after they recovered seven of these guns in connection with criminal investigations.

10.     In 2021 and 2022, the State of New York passed two laws that govern the sale and marketing of guns and ammunition. The first, codified at General Business Law § 875-a *et seq.*, requires that gun dealers adopt a security plan and take certain specified measures to prevent theft or diversion of guns and ammunition.  This law also requires that gun dealers adopt other measures to prevent illegal sales and trafficking. The second law, codified at General Business Law § 898-a *et seq.*, prohibits members of the gun industry from creating or contributing to a

2

FILED: ST. LAWRENCE COUNTY CLERK 07/18/2025 09:28 AM INDEX NO. EFCV-25-168235
NYSCEF DOC. NO. 1                                                        RECEIVED NYSCEF: 07/18/2025

Case 8:25-cv-01131-MAD-DJS    Document 1-1    Filed 08/21/25    Page 7 of 21

condition that endangers public safety or health, and requires members of the gun industry to implement reasonable controls and procedures to prevent diversion of guns and ammunition.

11.    Mr. Bowman testified, under oath, that he employs practices and procedures that violate these laws. The State therefore brings this action seeking injunctive relief, accounting, disgorgement of profits on sales made after June 2024, and costs.

## PARTIES AND JURISDICTION

12.    Petitioner is the People of the State of New York, by their attorney, Letitia James, Attorney General of the State of New York. Petitioner is commencing this action pursuant to (a) Executive Law § 63(12), which empowers the State to seek injunctive relief, restitution, damages, and costs against any person or business that engages in persistent fraud or illegality in the conduct of business, and (b) General Business Law § 898-D, which empowers the State to bring an action to enjoin and restrain violations of § 898-a, *et seq*., of the General Business Law, and to obtain restitution and damages.

13.    Respondent Bowman's Gun Shop, LLC, is headquartered at 337 County Route 11, Gouverneur, NY 13642.

14.    Respondent Timothy Bowman is the owner and president of Bowman's Gun Shop, LLC. He resides at 337 County Route 11, Gouverneur, NY 13642. Respondents Bowman's Gun Shop LLC and Timothy Bowman are collectively referred to as "Bowman's."

## FACTS

15.    Bowman's Gun Shop lacks basic safeguards to prevent its products from being diverted into the illegal marketplace: it does not lock up its inventory at night; it does not store ammunition out of the reach of customers; it does not have a security plan; and it does not have reasonable controls in place to prevent straw purchasing and theft of guns and ammunition.

3

Case 8:25-cv-01131-MAD-DJS   Document 1-1   Filed 08/21/25   Page 8 of 21

### Gun Dealers Play an Important Role in Preventing Gun Trafficking

16.     The vast majority of guns used in crimes originate in the lawful market for firearms—that is, they are manufactured by licensed manufacturers, who then transfer them to licensed dealers. Generally, diversion into the illegal marketplace can happen in a number of ways, including through burglaries of gun stores and when licensed dealers sell guns to traffickers or straw purchasers.

17.     According to data from the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), gun dealer burglaries occur with regularity in New York State. From 2017-2021, there were 39 reported instances of theft from federal firearms licensees ("FFLs"), with a total of 301 firearms reported stolen in those thefts.[1] During the same time period, 156 guns that had been stolen from New York State FFLs were recovered in criminal investigations. The ATF has reported that guns that are stolen from FFLs have unusually short time-to-crime metrics: over half of guns stolen from FFLs are recovered in connection with crimes within 180 days of the theft (and the bulk, 44.8%, are recovered within 90 days of the theft).[2] This is a strong indicator that these guns are trafficked immediately following the theft.

18.     Sales to straw purchasers can also fuel illegal trafficking of firearms. Straw purchasers buy guns for another person, while falsely representing that they are the actual purchasers. Often, the actual purchaser is prohibited under federal, state, or local law from purchasing or possessing a gun. Many guns are straw purchased in large numbers and then sold by traffickers. The result of straw purchasing is that records maintained by the gun dealer do not reflect the actual purchaser of the gun. Among other harms, straw purchases make tracing guns

---

[1] New York data re: FFL Burglaries, Robberies & Larcenies, 2017-2021, available at
https://www.atf.gov/firearms/docs/report/new-york-state-report/download.
[2] ATF, Part V: Firearm Thefts, https://www.atf.gov/firearms/docs/report/nfcta-volume-ii-part-v-firearm-thefts/download.

4

used in crime more difficult, and guns end up in the hands of those who are prohibited from possessing guns and those who use them to commit acts of violence.

19.     Before selling a gun, a licensed gun dealer must run a background check on the would-be purchaser to verify that that person is not prohibited from possessing a gun. The gun dealer must also have the purchaser complete ATF Form 4473, and an employee of the gun dealer must review and sign the form. In some instances, the gun dealer must complete a multiple sale form and report some multiple sales to local and federal law enforcement.

20.     New York State law imposes additional requirements upon gun dealers to prevent diversion of guns from the lawful marketplace to the unlawful marketplace. General Business Law § 875-a, *et seq*., and § 898-a *et seq.*, impose obligations on sellers of guns to ensure that their products do not end up in the hands of people who are likely to misuse them.

21.     Section 875-b of the General Business Law requires that all gun dealers "implement a security plan for securing firearms, rifles and shotguns . . . [that] satisf[ies] at least the following requirements: (a) all firearms, rifles and shotguns shall be secured, other than during business hours, in a locked fireproof safe or vault on the dealer's business premises or in a secured and locked area on the dealer's business premises; and (b) ammunition shall be stored separately from firearms, rifles and shotguns and out of reach of customers." Additionally, the dealer must install and maintain a security alarm system from a licensed alarm system operator, must have a video recording device at various points around the store, and must maintain those recordings for more than two years. *Id.* Dealers must also ensure that all employees attend a training course that the State Police provide. N.Y. Gen. Bus. Law § 875-e. Dealers must annually certify to the superintendent of state police that they are in compliance with these requirements. N.Y. Gen. Bus. Law § 875-g.

5

22.    Section 898-d of the General Business Law prohibits members of the gun industry from "knowingly or recklessly creat[ing], maintain[ing] or contribut[ing] to a condition in New York state that endangers the safety or health of the public through the sale, manufacturing, importing or marketing" of guns or ammunition. Members of the gun industry are required to "establish and utilize reasonable controls and procedures to prevent [their] qualified products from being possessed, used, marketed or sold unlawfully in New York." *Id.* "Reasonable controls and procedures" is defined, in relevant part, as "policies that include, but are not limited to: (a) instituting screening, security, inventory and other business practices to prevent thefts of qualified products as well as sales of qualified products to straw purchasers, traffickers, persons prohibited from possessing firearms under state or federal law, or persons at risk of injuring themselves or others." N.Y. Gen. Bus. Law § 898-a.

23.    As part of the implementation of these laws, the New York State Police created a training for all licensed gun stores in January 2023, and published the PowerPoint slides for that training on its web site. This training remains mandatory for all employees of gun dealers in the state.

24.    The training explains the physical security requirements of the new laws for the prevention of theft, by detailing what practices and structures a store must have in place:

6



25. The training includes three slides that educate gun stores about straw purchasing, including how to identify possibly illegal purchases and how to respond if a store employee suspects someone may be involved in straw purchasing or trafficking:







26.     New York State law requires that all gun stores provide this training to all

employees on an annual basis. N.Y. Gen. Bus. Law § 875-e.

27.     The provisions of General Business Law § 875-a, *et seq*., and § 898-a *et seq.*,

taken together, require gun dealers to take an active role in preventing illegal diversion of guns

and ammunition into the criminal trade.

### Bowman's Gun Shop's Sales, Security, and Storage Practices

28.     Bowman's Gun Shop is located in Gouverneur, New York, and is housed in a metal shed.

29.     Mr. Bowman opened Bowman's Gun Shop in 2014 and initially sold guns out of his private residence. Since then, Bowman's Gun Shop has engaged in business practices that do not meet New York legal or safety standards.

30.     In April 2019, Mr. Bowman's license to sell pistols and his permit to possess pistols were suspended by the County Court for the County of St. Lawrence for six months and one year, respectively. Following an investigation by the New York State Police, Mr. Bowman admitted that he had knowingly received two handguns from someone who he knew possessed them illegally and that he made false entries about these two handguns into his legally required logbooks.

31.     In September 2019, soldiers from nearby Fort Drum broke into Bowman's Gun Shop and stole 2 shotguns, 3 rifles, 2 pistols, over 50 boxes of ammunition, cash, and a BB gun. The burglars entered through an exterior door that was unlocked and then forced open an interior door.

32.     Following this first burglary, Bowman's did not change course to take necessary measures to safeguard the store. Almost exactly a year later, in September 2020, a different group of soldiers from Fort Drum broke into Bowman's Gun Shop. This time, the burglars stole 28 pistols, 12 revolvers, 9 rifles (including 4 AR-style rifles), and 2 shotguns.

33.     In that instance, Mr. Bowman had left a window partially open outside business hours so that he could run a hose from an air conditioner unit through the window; the burglars gained entrance through that window. Though Bowman's Gun Shop had an alarm system in

9

place at the time of this burglary, Mr. Bowman has admitted that he neglected to arm the system three quarters of the time, including on the night of the second burglary.

34.    In investigating the second burglary, the New York State Police were repeatedly contacted by police departments that had recovered guns in the course of their criminal investigations that had been stolen from Bowman's Gun Shop. Guns stolen in the 2020 burglary were recovered by authorities in New York City, Philadelphia, PA, and the country of Barbados.

35.    Additionally, although FFLs are required to log and report all stolen firearms to ATF, ATF later discovered an additional gun that was missing and had not reported by Bowman's as stolen.

36.    To enable licensed firearm dealers to operate effectively and safely, New York State enacted Article 39-BB of the General Business Law.

37.    According to his testimony, Mr. Bowman undertook the mandatory training on the law's requirements offered by the New York State Police.

38.    Even though Mr. Bowman has been trained as to what the law requires, he has not brought his store into compliance with State law.

39.    On October 20, 2023, the New York State Police inspected Bowman's Gun Shop.

40.    The inspector concluded that Bowman's Gun Shop did not comply with New York's requirements that gun stores implement a security plan; secure all guns after hours; store ammunition separately from guns and out of reach of customers; maintain recordings of video footage from the store for a minimum of two years; and maintain backups of paper records.

41.    Although Bowman's has updated the physical security of the store in some limited regards, as of June 2024 and upon information and belief through today, Bowman's still does not

10

have a security plan. This is a violation of State law and the responsibility Bowman's carries to our communities.

42. Further contrary to New York law, as of June 2024 and upon information and belief through today, Bowman's stores its guns in glass display cases or on wall displays with no locking mechanism.

43. Further contrary to New York law, as of June 2024 and upon information and belief through today, Bowman's does not secure guns after hours in any locked or secure storage area.

44. Further contrary to New York law, as of June 2024 and upon information and belief through today, Bowman's stores ammunition on open shelving in the store, within reach of customers.

45. Further contrary to New York law, as of June 2024 and upon information and belief through today, Bowman's does not have any system in place for maintaining video recordings from the store's security camera for two years.

46. Further contrary to New York law, upon information and belief through today, Bowman's does not have a system in place for ensuring that all employees, volunteers, or personnel conducting business on behalf of Bowman's receive the legally required training.

47. Finally, contrary to New York law, as of June 2024 and upon information and belief through today, Bowman's does not have in place reasonable controls to prevent illegal diversion of products, including but not limited to identifying straw purchasers and traffickers. The business does not train its employees in recognizing straw purchasers and frequently allows non-employees to make sales and run background checks.

11

48. Bowman's has had years to come into compliance with New York law and uphold its obligations as a licensed firearms dealer in our State. Despite two burglaries that put communities near and far at risk, Bowman's failed and refuses to do so.

### FIRST CAUSE OF ACTION
### PURSUANT TO EXECUTIVE LAW § 63(12) ILLEGALITY
### VIOLATIONS OF GBL § 875-B
### (as to all Respondents)

49. The State repeats and re-alleges paragraphs 1 through 48 and incorporates them by reference herein.

50. Executive Law § 63(12) authorizes the Attorney General to seek injunctive and other equitable relief when any person or entity has engaged in repeated or persistent illegal conduct.

51. Section 875-b of the General Business Law requires that gun dealers implement a security plan, secure all guns after hours, store ammunition separately from guns and out of the reach of customers, maintain a licensed security alarm system, install video security cameras at the entrance and exit to the store and at each point of sale, and maintain those video recordings for at least two years.

52. Respondents' persistent violations of § 875-b of the General Business Law include, but are not limited to, the following:

      a. Failing to create and implement a security plan, beginning earlier than October 2023 and continuing through today;

      b. Storing guns in glass display cases or unlocked in wall displays, beginning earlier than October 2023 and continuing through today;

      c. Storing ammunition on open shelves that are easily accessible to customers, beginning earlier than October 2023 and continuing through today; and

12

     d.   Failing to maintain video recordings for at least two years, beginning earlier than October 2023 and continuing through today.

53.    By their actions in violation of § 875-b of the General Business Law, Respondents Bowman's Gun Shop and Timothy Bowman have engaged in repeated and persistent illegality in violation of Executive Law § 63(12).

**SECOND CAUSE OF ACTION**
**PURSUANT TO GENERAL BUSINESS LAW § 898-D**
**(as to all Respondents)**

54.    The State repeats and re-alleges paragraphs 1 through 48 and incorporates them by reference herein.

55.    Section 898-d of the General Business Law authorizes the Attorney General to bring an action in the Supreme Court seeking injunctive and other equitable relief when any person or entity violates § 898-a, *et seq*.

56.    Section 898-a, *et seq*. of the General Business Law requires gun dealers to maintain reasonable controls to prevent theft of guns and ammunition, "as well as sales of [guns and ammunition] to straw purchasers, traffickers, persons prohibited from possessing" guns . . . "or persons at risk of injuring themselves or others."

57.    Respondents' violations of § 898-a, *et seq*. of the General Business Law include, but are not limited to, the following:

     a.   Storing guns in unlocked displays, even after business hours;

     b.   Storing ammunition in unlocked, open shelving that is accessible to customers;

     c.   Not tracking whether all employees of the store had completed New York's mandatory training course for gun dealer employees;

     d.   Lacking basic knowledge about how to identify potential straw purchasers; and

13

FILED: ST. LAWRENCE COUNTY CLERK 07/18/2025 09:28 AM INDEX NO. EFCV-25-168235
NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 07/18/2025

Case 8:25-cv-01131-MAD-DJS Document 1-1 Filed 08/21/25 Page 18 of 21

e. Lacking screening practices and policies to identify and block illegal sales.

58. By these actions, Respondents failed to implement reasonable controls, as required by § 898-a, *et seq*., of the General Business Law.

### PRAYER FOR RELIEF

WHEREFORE, the State requests that the Court grant relief pursuant to Executive Law § 63(12) and § 875-a, *et seq*., and § 898-a, *et seq*., of the General Business Law by issuing an order and judgment as follows:

1. Permanently enjoining Respondents and any other entity through which they may act from being engaged in the business of dealing firearms, or in the alternative, issuing a permanent injunction requiring Respondents to comply with New York State law, by:

    a. Creating a written security plan that describes physical security measures, electronic security measures, and operational security measures, including provisions for securing all firearms, rifles, and shotguns outside of business hours;

    b. Purchasing gun safes or otherwise secure the guns inside the store after business hours, such as by installing cord locks for long guns and secure, locked display cases for handguns;

    c. Storing ammunition separately from firearms, rifles, and shotguns, and out of the reach of customers;

    d. Maintaining a video surveillance system and security alarm system and devising a manner of maintaining video recordings for no less than two years;

14

e.  Creating an employee handbook that, at a minimum, satisfies the security plan requirements of General Business Law § 875-a *et seq* and describes the security practices of the store, policies to prevent diversion of firearms, and inventory practices;

f.  Requiring that any person who performs any tasks related to the purchase of firearms, rifles, shotguns, or ammunition on behalf of Bowman's Gun Shop attend or review the training course offered by New York State Police for gun dealers and their employees;

g.  Requiring that any person who performs any tasks related to the purchase of firearms, rifles, shotguns, or ammunition on behalf of Respondents is provided with a copy of the employee handbook referenced above and certifies in writing that they have received and read the handbook; and

h.  Providing that violations of such injunction shall be punishable by awarding liquidated damages of $5,000 per violation and requiring the Respondents to post a bond of not less than $50,000 against future violations of New York State law;

2.  Requiring that Respondents prepare an accounting of all profits made on sales of firearms and ammunition from July 6, 2021, until the date of resolution of this action, including: (i) Respondents' acquisition and disposition books; (ii) the wholesale price that Respondents paid for each product; (iii) the retail price for which the product sold; (iv) the number units of the product; (v) profits earned from each product; and (vi) Respondents' bank records for the relevant time period.

15

FILED: ST. LAWRENCE COUNTY CLERK 07/18/2025 09:28 AM INDEX NO. EFCV-25-168235
NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 07/18/2025

Case 8:25-cv-01131-MAD-DJS   Document 1-1   Filed 08/21/25   Page 20 of 21

3.    Disgorgement of all profits made on sales of firearms and ammunition from June
2024 until the date of resolution of this action;

4.    Awarding the State costs and disbursements of this action, including additional
costs in the amount of $4,000, pursuant to CPLR § 8303(a)(6); and

5.    Granting the State such other and further relief as this Court deems just and
proper.

Dated:     New York, New York
           July 17, 2025

LETITIA JAMES
Attorney General of the State of New York

By: Deanna R. Nelson
*Assistant Attorney General In Charge*
Dulles State Office Building
317 Washington Street
Watertown, NY 13601
315-523-6080
Deanna.Nelson@ag.ny.gov

Molly Thomas-Jensen
Monica Hanna
*Special Counsel*
Martha Grieco
*Assistant Attorney General*
28 Liberty Street
New York, NY 10005
212-416-8679
Monica.Hanna@ag.ny.gov
Molly.Thomas-Jensen@ag.ny.gov
Martha.Grieco@ag.ny.gov

16

FILED: ST. LAWRENCE COUNTY CLERK 07/18/2025 09:28 AM INDEX NO. EFCV-25-168235
NYSCEF DOC. NO. 1                                                     RECEIVED NYSCEF: 07/18/2025

Case 8:25-cv-01131-MAD-DJS     Document 1-1     Filed 08/21/25     Page 21 of 21

STATE OF NEW YORK                )
                                 )     s.s.:
COUNTY OF JEFFERSON   )

    Deanna R. Nelson, affirms the following under penalties of perjury pursuant to CPLR 2106:

    I am an Assistant Attorney General In Charge within the Office of Letitia James, Attorney General of the State of New York, and am authorized to make this verification.

    I have read the foregoing Verified Petition and know the contents thereof, which are to my knowledge true, except as to matters stated to be alleged on information and belief, and as to those matters, I believe them to be true. The grounds of my belief as to all matters stated upon information and belief are set forth in the attached affirmation and include investigatory materials and information contained in the files of the Office of the Attorney General.

    That the reason this verification is made by your deponent and not by the State of New York is that the State of New York is a body politic and sovereign acting through its officials and agents.

7-17-2025

_____
Deanna R. Nelson

17