United States District Court
Northern District of New York

_____

People of the State of New York
by Letitia James, Attorney General
of the State of New York,

    *Plaintiff*

   *v.*

Bowman's Gun Shop, LLC; and,
Timothy Bowman,

    *Defendants*.

_____

**DEFENDANTS' SECOND
 MEMORANDUM OF LAW**


Hon. Anthony J. Brindisi

Case No.:  8:25-cv-1131 (MAD/DJS)


**DEFENDANTS' SECOND MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

I.    FEDERAL COURT AND NYSP ANALYSIS OF NEW LAWS IS EMERGING ….. 1.

    A.  THE 2023 SECOND CIRCUIT GAZZOLA V. HOCHUL DECISION VALIDATED PLAINTIFFS' NOVEL THEORY OF THE CASE ….. 1.

    B.  NYS POLICE PUBLIC POSITION ON NY GBL §875 IS ONE OF NON-ENFORCEMENT ….. 3.

II.   "PEOPLE V. BOWMAN" IS NOT "A STATE CASE." ….. 3.

III.  THE STATE FAILS TO DISTINGUISH THE FEDERALLY-LICENSED DEALER IN FIREARMS FUNCTION FROM A MANUFACTURED PRODUCT FEATURE ….. 6.

**TABLE OF AUTHORITIES**

**U.S. FEDERAL CONSTITUTION**

U.S. Const., amend. II ….. 1

**FEDERAL STATUTES**

Protection of Lawful Commerce in Firearms Act ("PLCAA"), Pub. L. 109-92 (Oct. 26, 2005), 15 U.S.C. §§7901-7903 ….. 5, 6.

18 U.S.C. §922(g) ….. 7 n.4.

**FEDERAL REGULATIONS**

27 CFR §127 ….. 7.

27 CFR §478.57 ….. 7.

**STATE STATUTES – NEW YORK**

NY CNT §700 ….. 4.

NY CPL §190.55(2)(b) ….. 5.

NY CPL §310.40 ….. 5.

NY EXE §63(3) ….. 4.

NY EXE §63(12) ….. 4, 5.

NY GBL, art. 39-BB ….. 4, 8.

NY GBL §875 ….. 1, 2, 3, 5.

NY GBL §875-b ….. 3.

NY GBL §875-h ….. 3.

NY GBL §875-i ….. 3, 4.

NY GBL §898-b ….. 1, 5.

NY PEN §400.00(11) ….. 3, 4, 4 n.3.

**FEDERAL COURT CASES – U.S. SUPREME COURT**

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (June 5, 2025) ….. 5, 6.

*District of Columbia v Heller*, 554 U.S. 570 (2008) ….. 7 n.5.

*McDonald v. City of Chicago, III*, 561 U.S. 742 (2010) ….. 7 n.6.

*NYS Rifle & Pistol Assn. v. Bruen*, 597 U.S. 1 (2022) ….. 7 n.7.

*United States v. Rahimi*, 602 U.S. 680 (2024) ….. 7 n.8.

**FEDERAL COURT CASES – 2ND CIRCUIT COURT OF APPEALS**

*Gazzola v. Hochul*, 88 F.4th 186, 194 (2d Cir. 2023) ….. 2, 3.

**FEDERAL COURT CASES – CIRCUIT COURT OF APPEALS - OTHER**

*Roberts v. Smith & Wesson Brands*, at 98 F.4th 810 (7th Cir. 2024) ….. 6.

United States District Court
Northern District of New York

_____

People of the State of New York
by Letitia James, Attorney General
of the State of New York,

        *Plaintiff*

      *v.*

Bowman's Gun Shop, LLC; and,
Timothy Bowman,

        *Defendants*.

_____

**DEFENDANTS' SECOND
MEMORANDUM OF LAW**

Hon. Anthony J. Brindisi

Case No.:  8:25-cv-1131 (MAD/DJS)

## I.      FEDERAL COURT AND NYSP ANALYSIS OF NEW LAWS IS EMERGING.

There are three cases currently pending in federal court that are and will be the main drivers

of the interpretation of 2021 and 2022 New York laws under, primarily, the Second Amendment to

the U.S. Constitution, through the Fourteenth Amendment Equal Protection Clause.  As identified

in the "Notice of Removal" and as updated in the accompanying attorney affirmation,  there is

*NSSF v. James* for NY GBL §898-b, *et. seq.*, *Gazzola v. Hochul* for NY GBL §875, and, now,

*Bowman*, for the NY Attorney General attempted marriage of the two. ECF 1, ¶9; ECF 18-3, p. 10.

### A.  THE 2023 SECOND CIRCUIT GAZZOLA v. HOCHUL DECISION VALIDATED PLAINTIFFS' NOVEL THEORY OF THE CASE.

To be clear in light of errors of law and fact in the recent *Gazzola v. Hochul* decision, the

Second Circuit Court of Appeals, previously, in 2023 had already reversed the key component of

the first District Court decision, ruling that plaintiff dealers in firearms articulated a sufficient basis

for their novel theory of "unconstitutional regulatory overburden" in relation to the 2022 new laws,

which impose extensive compliance mandates, industrywide.  Because NY GBL §875 is the underlying basis of the State's *Bowman* Petition at ECF 1-1 and is referenced by the State, a brief walk-through of the essentials from the 2023 *Gazzola* Second Circuit decision is helpful.

Here is the precise language of the 2023 Second Circuit reversal that endorsed the *Gazzola* claim to what plaintiffs coined as "unconstitutional regulatory overburden:"

> "Without questioning Appellants' derivative standing, the district court held that there was "no basis for their novel theory" that New York law violated their customers' right to acquire firearms by imposing too many burdens on them as commercial dealers. *Gazzola*, 645 F.Supp.3d at 71.  We conclude that there is a sufficient basis for that theory, but we hold that Appellants are not entitled to preliminary injunctive relief." *Gazzola v. Hochul*, 88 F.4th 186, 195 (2d Cir., 2023).

The Second Circuit left open to future discussion the articulation of the standard, so-stated as follows:

> "We have no present occasion to set out specific guidance as to how a trial court must assess evidence that a commercial regulation is stifling the individual right of access to firearms (assuming a plaintiff one day produces it).  But whatever the standard is, a State cannot impose a regulation on commercial firearms dealers as a class that has the effect of prohibiting law-abiding, responsible citizens from possessing common-use weapons." *Gazzola*, 88 F.4th, at 196, n.6 (emphasis added).

The preliminary insight of the future standard analogizes medical providers engaged in abortion practice, as follows:

> "For example, when the Supreme Court recognized a right to abortion, it correspondingly recognized that a State could not circumvent the Fourteenth Amendment's prohibition on abortion bans by imposing unnecessary special regulations on abortion providers as a class that had "the purpose or effect of presenting a substantial obstacle to a woman seeking an abortion"; such would constitute "an undue burden on the right." (citations omitted) *Gazzola*, 88 F.4th, at 196 (emphasis added).

2

### B.  NYS POLICE PUBLIC POSITION ON NY GBL §875 IS ONE OF NON-ENFORCEMENT.

The NYS Police have taken a public position in accord with what was sought through the *Gazzola* cross-motion.  On July 18, 2025,[1] the NYSP executive director of public information went on record during an interview and said the NYSP has "no regulatory authority and cannot impose penalties upon firearms dealers."[2] (emphasis added)  Continuing, "Instead, state police work with those dealers to help bring them into compliance with the regulations."

### II.      "PEOPLE v. BOWMAN" IS NOT "A STATE CASE."

There are two, important distinctions getting mired in this round of motions.  First, the State did not bring a "state case" against Mr. Bowman and Bowman's Gun Shop, LLC (herein, used singularly and collectively).  Second, set forth in the next section, the State is failing to distinguish the FFL-01 performance responsibilities under federal officer direction versus the firearm as an inert product.  As a result, the State is not properly seeing the federally-licensed dealer "sales" dynamic in relation to the allegations made in the "Petition."

There are two relevant statutory pathways available to initiate legal proceedings with a state-licensed dealer in firearms, if one is arguably outside the law.  Either could be argued to stay at a county court level.  First, a civil action against an individual state-licensed dealer in firearms to suspend or revoke the license, itself, under NY PEN §400.00(11).  Second, a criminal action against an individual state-licensed dealer to prosecute a misdemeanor charge(s) for violation of NY GBL §875-b through §875-h, under NY GBL §875-i. ECF 1, ¶¶78-79.

---

[1]  The same date the NY Attorney General published the "press release" against Tim Bowman and filed the "Petition," removed, herein.

[2]  Hyman, M., "Consequences Will Be Lethal: New York ATF Enforcement to be Slashed Under Trump," New York Focus (July 18, 2025).

The State, in this *Bowman* case, availed itself of neither pathway. It did not do so because it cannot. The NY Attorney General is not authorized to independently do so. The words "Attorney General" do not appear in NY PEN §400.00(11), nor in GBL, art. 39-BB.

Looking at the "Petition" at ECF 1-1, the State did not request suspension or revocation of Mr. Bowman's state licenses as a dealer in firearms or as a gunsmith, nor as to his individual concealed carry permit. See, "Notice" (p. 1-3) and "Petition" (p. 18-20). The Petition at "Parties and Jurisdiction" (¶12) does not claim to bring a license case. Such a case could have filed, *arguendo*, before a county court judge, under NY PEN §400.00(11).[3]

Similarly, a criminal case, *arguendo*, could have filed under NY GBL §875-i ("Violations. Any person, firm, or corporation who knowingly violates any provision of this article shall be guilty of a class A misdemeanor punishable as provided for in the penal law.") through a county district attorney's office via grand jury indictment for misdemeanor charge(s) (NY CNT §700), or, through a request of the NYS Police Superintendent to the NY Attorney General through NY EXE §63(3) ("Upon request of the…head of…division…of the state…").

The State did not file a criminal case, charging misdemeanor(s) under NY GBL §875-i. The Petition (ECF 1-1) at "Parties and Jurisdiction" (¶12) does not claim a request having been received by the NY Attorney General from the NYSP Superintendent; nor is such included in causes of action one (¶¶50-53)or two (¶¶55-58); nor is it noticed as such (pp. 1-3 and 18-20).

Instead, the NY Attorney General in the first cause of action unilaterally declared Mr. Bowman guilty of "Executive Law §63(12) <u>illegality violations</u> of GBL §875-B (*sic*)." ECF 1-1, heading above ¶49 (p. 16) (emphasis added). The allegation uses "repeated or persistent illegal

---

[3] NY PEN §400.00(11), so stated: "…elsewhere than in the city of New York by any judge or justice of a court of record…"; or, "A license to engage in the business of dealer may be revoked or suspended for any violation of the provisions of article thirty-nine BB of the general business law.").

conduct" from NY EXE §63(12), followed by language from subdivisions of NY GBL §875. The "Petition" is not supported by a criminal court conviction (see, e.g., NY CPL §310.40), nor even the start of a criminal case through a grand jury indictment (NY CPL §190.55(2)(b)).

This deficiency in this *Bowman* case flies straight into the admonition of Justice Thomas in his concurring opinion to *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (June 5, 2025). ECF 1, ¶10. Justice Thomas wrote, "In future cases, courts should more fully examine the meaning of "violation" under the [Protection of Lawful Commerce in Arms Act ("PLCAA")]. It seems to me that the PLCAA at least arguably requires not only a plausible *allegation* that a defendant has committed a predicate violation, but also an earlier *finding* of guilt or liability in an adjudication regarding the "violation." *Id.*, at 299 (Thomas, J., concurring) (emphasis in original).

Similarly, the second cause of action declares "violations" of NY GBL §898-b that are grounded into language of the subdivisions of NY GBL §875. NY GBL §898-b, even as amended in 2021, on its own, because it is lacking any criminal "teeth," fails to accord to the U.S. Supreme Court decision in *Smith & Wesson*. The second cause of action either has to borrow from NY GBL §875 subdivision language and include a "finding of guilt or liability" or it sails perilously close to a frivolous filing under N.Y.C.R.R. Subpt. 130-1.1(c)(1) ("it is completely without merit in law and cannot be supported by a reasonable argument for…modification or reversal of existing law").

This contortion of NY GBL §875 is where the NY Attorney General's Office blows their now presentation to this Court that *Bowman* is just another "state" case. The ruse takes an equilateral triangle peg, pushes into a square space, and tries to disguise its compulsion to be the "star" of "predicate exception" to PLCAA. The two causes of action of the State's "Petition" sound in negligence. That is pure PLCAA, the defense conferred by the U.S. Congress for federally-licensed dealers and manufacturers of firearms, to keep them from suffering repeated

5

tort-based claims, sounding in negligence, like those brought by the government of Mexico. *Smith & Wesson*, 605 U.S., at 288. ECF 1, ¶14. If such exceptions would fall within the predicate exception, a unanimous U.S. Supreme Court wrote, "it would swallow most of the rule." *Id.*, at 299. "We doubt Congress intended to draft such a capacious way out of PLCAA, and in fact it did not." *Id.*

The license of a dealer in firearms is not a common law tort. It is, naturally, administrative law; although, in New York, it is found in the Penal Law. One is not charged with a "tort;" one is charged under the Penal Law, including with the *scienter* of a "knowing" violation. It is "negligence" that sounds in tort, and that is the *corpus* of not only PLCAA, but, also, the June 5, 2025 decision of the U.S. Supreme Court in *Smith & Wesson*.

## III.   THE STATE FAILS TO DISTINGUISH THE FEDERALLY-LICENSED DEALER IN FIREARMS FUNCTION FROM A MANUFACTURED PRODUCT FEATURE.

The State doesn't differentiate between *the people* who perform the services under the auspices of their federal officer counterparts, as separate and apart from *the object* that is for sale. The Memorandum, e.g., cites to *Roberts v. Smith & Wesson Brands*, at 98 F.4th 810 (7th Cir. 2024) (ECF-19, p. 7, 12), but doesn't highlight the case involves a feature of a product as a company design decision and an advertisement(s). The key in this *Bowman* case is the sales dynamic and concurrent federal officer together with the federally-licensed dealer in firearms on every single transaction, every day, *inter alia*, that elevates the dealer in firearms for federal removal purposes. The State case is in direct opposition to the federal functionality. ECF 1, ¶19.

The very title from the NYS Legislature of NYS S.4970-A was "An Act to amend…the general business law and the penal law, in relation to preventing the unlawful sale of firearms, rifles, and shotguns to individuals with a criminal record." The State clarified recently their

6

"Petition" at ¶¶41-47 (only) is the "basis for relief" in ECF 10-1 (p. 17). Those allegations concern restricting the transfer of firearms at the FFL through the lawful sales process. The NYS Legislature is leaning into the federal system at the same time the NY Attorney General is leaning away. The unified purpose for the licensed dealer should be to permit such persons as are not disqualified under federal law[4] to lawfully exercise their Second Amendment rights under *Heller*,[5] under *McDonald*,[6] under *Bruen*,[7] while such disqualified persons, as under *Rahimi*,[8] are stopped by the dealer in firearms, working the ATF and the FBI, as early in the process of an attempted sale as possible, or as quickly after an unlawful transfer, loss, or theft as may occur.

Equally, without the federally-licensed dealer, you have no back-end to the licensing system. Public safety through a national system uses that back end to respond to the 95% of firearms theft that occurs at the level of private citizens; 2.8% at the FFL level; and 3.2% in transit of shipments.[9] Trace is undisputably a vital public safety function.[10]

There is a direct negative impact upon distribution of labor between the federally-licensed dealers in firearms and ATF personnel upon termination of the federal license when all federal records created are transferred to the ATF "National Tracing Center." 27 CFR §478.57; 27 CFR §127. Federally-licensed dealers in firearms, like Tim Bowman, perform trace functions within 24-hours of the ATF/FBI request, using their on-site federal records they have partnered to create

---

[4]  As defined at 18 U.S.C. §922(g).

[5]  *District of Columbia v Heller*, 554 U.S. 570 (2008).

[6]  *McDonald v. City of Chicago, III*, 561 U.S. 742 (2010).

[7]  *NYS Rifle & Pistol Assn. v. Bruen*, 597 U.S. 1 (2022).

[8]  *United States v. Rahimi*, 602 U.S. 680 (2024).

[9]  U.S. DOJ, Natl. Firearms Commerce and Trafficking Assessment (NFCTA), Vol. IV, Pt. II, "Firearm Thefts from Private Citizens," p. 7-8.

[10]  "The firearm must have been used, or be suspected to have been used, in a crime. This gun trace data is essential to law enforcement efforts to combat violent crime and firearms trafficking." U.S. Dep't. of Justice, "Privacy Impact Assessment for NTC Connect," Apr. 4, 2023, p. 1.

to exacting specifications.   When the FFL-01 license terminates and those records revert to the ATF, it is ATF employees who integrate the individual dealer records into the national repository to expand ATF employee trace searches.  In New York, since July 2022, more than 305 individuals with FFLs have stopped doing on-site trace and transferred their records to the ATF. ECF 18-3, p. 12.  Existing ATF personnel must absorb that work.

The NYS Legislature places so much value in the ATF and its national FFL-based trace program that the amendments that ushered in NY GBL, art. 39-BB, as amended onto NYS S.4970-A, concurrently required all state and lesser municipal law enforcement officers to route every firearm recovered through ATF trace. See, NYS S.4970-A, p. 2:7-13 ("Every report made to the criminal gun clearinghouse will result in the prompt submission of a request to the national tracing center of the bureau of alcohol, tobacco, firearms and explosives to trace the movement of the subject gun…").

The NYS Legislature in certain respects in 2022, the NYSP recently, and the FFLs are moving towards realignment, which needs to occur if the FFL is to perform necessary public safety functions that are designed for universal public safety, balanced with fundamental civil rights. Anything that distracts from what should be that shared objective must be met head-on through this appropriately-removed federal case.

Dated:  October 21, 2025

Respectfully Submitted,

*Paloma A. Capanna*

Paloma A. Capanna, Attorney
N.Y. Bar Roll No. 2483469
106-B Professional Park Drive
Beaufort, North Carolina 28516
(252) 515-3676
pcapanna@yahoo.com

8