**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

PEOPLE OF THE STATE NEW YORK,
by Letitia James, Attorney General of the
State of New York,

                Plaintiff,

        -v-                            8:25-CV-1131 (AJB/DJS)

BOWMAN'S GUN SHOP, LLC,
and TIMOTHY BOWMAN,

                Defendants.
_____

**Hon. Anthony Brindisi, U.S. District Judge:**

**<u>DECISION & ORDER</u>**

## I.      INTRODUCTION

On July 18, 2025, the People of the State of New York, by Letitia James, Attorney

General of the State of New York (the "OAG"), filed this civil action in Supreme Court, St.

Lawrence County, against defendants Bowman's Gun Shop, LLC (the "Shop"), a federally

licensed firearms dealer located in Gouverneur, New York, and its sole owner and primary

operator, Timothy Bowman ("Bowman") (collectively "defendants"). Dkt. No. 2.

The OAG's verified petition[1] alleges that defendants have repeatedly violated provisions

of New York's General Business Law §§ 875 and 898, a set of state-law measures that regulate

certain aspects of the sale and marketing of firearms. The OAG's verified petition alleges, _inter_

_alia_, that defendants' business practices violate §§ 875 and 898 because the Shop lacks certain

---

[1] The OAG is denominated as "petitioner" in the state-court action (and defendants are "respondents") because the action was filed as a "special proceeding" under N.Y. Executive Law § 63(12), which gives the OAG authority to sue a person or entity engaged in persistent, unlawful business activity. _See New York ex rel. James v. Citibank, N.A._, 763 F. Supp. 3d 496, 507 (S.D.N.Y. 2025).

basic safeguards: it does not lock up its inventory, it does not keep or store ammunition out of reach of its customers, it does not have a security plan or reasonable purchase controls in place, and it fails to maintain copies of certain business records.  *See* Dkt. No. 2.

On August 21, 2025, Bowman filed a notice of removal—on behalf of himself, but not the Shop—that removed the action to federal court.  Dkt. No. 1.  Because his removal petition flagged this case as related to prior federal-court litigation assigned to U.S. District Judge Mae A. D'Agostino and Chief U.S. District Judge Brenda K. Sannes, *see* Dkt. No. 1-2, the case was directly assigned to Judge D'Agostino for a relatedness review, Dkt. No. 9.  Judge D'Agostino determined that the cases were not related after all and ordered the Clerk to reassign this matter to another district judge.  *Id*.  The case ultimately landed before this Court.  Dkt. No. 11.

On September 4, 2025, the OAG moved to remand this action back to state-court.[2]  Dkt. No. 10.  Defendants opposed and cross-moved for, *inter alia*, leave to supplement the notice of removal to add the Shop as a removing party.  Dkt. No. 18.

The cross-motions have been fully briefed, Dkt. Nos. 19, 20, 23, and will be considered on the basis of the submissions without oral argument.

## II.     DISCUSSION

Bowman's notice of removal asserts federal jurisdiction based on: (1) the federal-officer removal statute, "because he holds an ATF-issued Federal Firearms License Type-01 for which he is the ATF Responsible Person"; and/or (2) the federal-question statute, because the OAG's state-law claims "raise one or more substantial federal questions."  Dkt. No. 1 ¶¶ 17, 61.

---

[2] Defendants have sought certain scheduling relief by letter motion.  Dkt. No. 6, 8, 14.  And in their cross-motion, defendants have also sought to stay proceedings pending a decision in a case before Chief Judge Sannes, Dkt. No. 18-1 ¶ 21, and for a "scheduling order for [the filing of an] omnibus motion."  Dkt. No. 18.

"Federal courts are courts of limited jurisdiction that possess only that power authorized by the Constitution and statute." *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) (cleaned up). "An action that was originally filed in state court may be removed by a defendant to federal court only if the case originally could have been filed in federal court." *Connecticut ex rel. Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 132 (2d Cir. 2023) (cleaned up). "A party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011).

### 1. Federal-Officer Removal

Under 28 U.S.C. § 1442(a)(1), a case may be removed to federal court when it is brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office."

This is known as the federal-officer removal statute. "To invoke the statute, a defendant who is not himself a federal officer must demonstrate that (1) the defendant is a 'person' under the statute, (2) the defendant acted 'under color of federal office,' and (3) the defendant has a 'colorable federal defense.'" *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008)).

The first two prongs "tend to collapse into a single requirement: that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (cleaned up).

Unlike the general removal statute, which is strictly construed, *see, e.g.*, *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941), the Supreme Court has repeatedly cautioned that

the federal-officer removal statute should not be interpreted in a "narrow, grudging" manner, *see, e.g.*, *Willingham v. Morgan*, 395 U.S. 402, 406 (1969).  Accordingly, "[c]ourts generally apply a broad construction—particularly with respect to private parties who claim to be 'acting under' a federal officer."  *Agyin v. Razmzan*, 986 F.3d 168, 175 (2d Cir. 2021).

Bowman acknowledges that he is neither a federal officer nor a federal contractor.  Dkt. No. 18-3 at 7–15.[3]  Even so, Bowman contends that removal under the federal-officer statute is appropriate because he is "acting under" federal officers while engaged in his business:

> Mr. Bowman is a federally-licensed dealer in firearms, having been extended that license as a direct result of legal authority delegated to Congress in 1968 and continuously offered to private individuals and private businesses ever since.  The balance offered by Mr. Bowman and other FFLs like him is the eternal People vs. the Government balance.  To sustain that balance, this Court must support Mr. Bowman's efforts to sustain the federal-state balance through removal to federal court.

Dkt. No. 18-3 at 12.  As Bowman explains, "[h]e has a lot of federal officers to answer to at the ATF and the FBI."  *Id*.  According to Bowman, he is subject to federal "compliance mandates" that must be performed "on a daily basis," including: (1) being required to respond to ATF trace requests within 24 hours; (2) performing background checks on customers that may require him to decline a sale; and (3) permitting periodic inspections of the Shop.  *Id*. at 12–15.

Even crediting the non-conclusory assertions in the notice of removal, Bowman has not established that federal-officer removal was appropriate.  *See, e.g.*, *Agyin*, 986 F.3d at 175 ("[A] court [ ] must credit defendant's theory of the case when evaluating the relationship between the defendants' actions and the federal officer.") (cleaned up).

---

[3] Pagination corresponds to CM/ECF headers.

The reason is fairly simple: "being subject to federal regulation differs from acting under a federal agent for the purpose of 28 U.S.C. § 1442(a)(1)." *Roberts v. Smith & Wesson Brands, Inc.*, 98 F.4th 810, 813 (7th Cir. 2024). The Supreme Court has explicitly refused to collapse the distinction between, on the one hand, carrying out specific duties or tasks in compliance with a comprehensive scheme of federal regulation and, on the other hand, being engaged in "an effort to assist, or to help carry out the duties or tasks of the federal superior." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 152 (2007) (emphases omitted).

As the Supreme Court explained in *Watson*:

> A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored.

551 U.S. at 153. In the limited number of cases where private businesses have been "acting under" federal direction, "the key distinguishing factor has been that 'the private contractor in such cases is helping the government to produce an item that it needs.'" *Connecticut ex rel. Tong*, 83 F.4th at 144 (quoting *Watson*, 551 U.S. at 153). "The Supreme Court has said, for example, that a private company acting pursuant to a contract with the federal government has this relationship." *Agyin*, 986 F.3d at 175.

Bowman's theory of his case does not fit within this rubric. That remains true even after accounting for the broad construction that this theory must be afforded under the federal-officer removal statute. After all, "broad language is not limitless." *Watson*, 551 U.S. at 147. And the theory being offered by Bowman seems to lack a limiting principle: a federal firearms licensee could make a federal case out of any state-law regulation that might touch on some aspect of its in-state business activities merely because it is the subject of comprehensive (even "pervasive")

federal regulation. *Roberts*, 98 F.4th at 814 (rejecting substantially similar argument where removing defendant was a gun manufacturer that "acts wholly as a private entity that must comply with federal (and state) regulation").

That is not the law. Indeed, the Supreme Court already rejected this result in *Watson*, cautioning that an unprincipled view of the proper statutory purpose of federal-officer removal "would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries." 551 U.S. at 153.

The Second Circuit has rejected similar removal arguments asserted by defendants who operate in highly regulated industries. For instance, in *Solomon v. St. Joseph Hospital*, 62 F.4th 54 (2d Cir. 2023), the plaintiff sued the hospital for personal injuries he sustained when he was admitted for COVID-19. *Id*. at 57. The hospital removed the case to federal court by asserting, *inter alia*, that it was "acting under" federal direction because it was subject to the PREP Act, a federal law that provides immunity from claims that arise during a public-health emergency. *Id*. at 58. The *Solomon* panel rejected that argument as "meritless," explaining that, consistent with the Supreme Court's holding in *Watson*, a highly regulated private company's compliance with federal regulations does not, *ipso facto*, mean that the private firm was "acting under" a federal officer for purposes of the federal-officer removal statute. *Id*. at 63.

Likewise, in *Connecticut ex rel. Tong v. Exxon Mobil Corporation*, 83 F.4th 122 (2d Cir. 2023), the State of Connecticut sued the fossil fuel manufacturer for deceiving its citizens about the environmental harms associated with its products. *Id*. at 129. The oil company removed the case to federal court by asserting, *inter alia*, that it was "acting under" federal direction based on its business relationship with the federal government. *Id*. at 143. The *Tong* panel rejected those arguments, explaining that, even crediting the oil company's theory of jurisdiction, the case was

a "total mismatch" between its federally supervised activities (production of fossil fuels) and the business practices at issue (allegedly deceitful advertising campaigns).  *Id*. at 145.

A brief overview of another Second Circuit case confirms the boundaries of this general principle.  In *Agyin v. Razmzan*, 986 F.3d 168 (2d Cir. 2021), the plaintiff sued her physician in state court for medical malpractice.  *Id*. at 171.  The physician removed the case to federal court, asserting that he was "acting under" a federal officer when he provided medical services because his employer was a "federally deemed community health center," which, under federal law, also "deemed" him to be a federal employee.  *Id*. at 176.  The *Agyin* panel agreed, reasoning that the physician "performed a job that—in the absence of the [federal law] deeming health centers and their staffs to be federal employees—the federal government would have had to perform itself: He assisted and helped to carry out the duties of the federal government to provide medical care to the indigent."  *Id*.

Bowman has not identified a federal law or provision that might deem him to be a federal employee.  So this is not *Agyin*.  Instead, Bowman has gestured—somewhat broadly—at the fact that he operates in an industry that is already subject to substantial federal regulation.  So absent more, this case is not meaningfully distinguishable from *Tong* or *Solomon*.  If anything, this case is closest to *Tong*: a state-court civil proceeding brought by a state on behalf of its citizens under a state-court business-practices statute against a defendant who happens to operate in a federally regulated field.  Accordingly, Bowman has not carried his burden of showing that federal-officer removal was appropriate.

## 2. Federal-Question Removal

Under 28 U.S.C. § 1441(a), a case may be removed to federal court if the federal district court would have "original jurisdiction" over the action.  Absent diversity of citizenship, federal

district courts have "original jurisdiction" over actions "arising under" the Constitution, laws, or treaties of the United States.  28 U.S.C. § 1331.  In other words, § 1441(a) authorizes removal on the basis of a "federal question."

However, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal question exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (cleaned up).

"In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts must construe the removal statute narrowly, resolving any doubts against removability." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) (cleaned up).

As an initial matter, the OAG argues that Bowman's notice of removal appears to violate the "rule of unanimity," which requires all defendants named in the state-court action to consent to removal within thirty days of service.  Dkt. No. 10-1 at 20–22.

Originally a common-law rule, *Chi., Rock Island, & Pac. Ry. Co. v. Martin*, 178 U.S. 245, 248 (1900), but codified in 2011, *see Taylor v. Medtronic, Inc.*, 15 F.4th 148, 150 (2d Cir. 2021), the "rule of unanimity" requires that "all defendants who have been properly joined and served must join in or consent to removal of the action" within thirty days after receipt of the initial pleading or summons.  28 U.S.C. §§ 1446(b)(2)(A), (B).

Although the Second Circuit has not prescribed "what form a consent to removal must take," *Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 66 (2d Cir. 2012), courts have repeatedly held that this "rule of unanimity" requires non-removing defendants to unambiguously express their

consent to removal in writing. *See, e.g.*, *Gold Town Corp. v. United Parcel Serv., Inc.*, 519 F. Supp. 3d 169, 175–76 (S.D.N.Y. 2021) (collecting cases).

The OAG's verified petition names two respondents: Bowman and the Shop. Dkt. No. 2. But the notice of removal was only filed on behalf of "defendant Tim Bowman." *See* Dkt. No. 1. The removal petition further alleges that "[n]o other defendant being named, no written consent of removal is required or attached." *Id.* ¶ 3.

This is obviously incorrect. In his opposition and cross-motion, Bowman acknowledges the defect but seeks leave to file an amended or "supplemental" notice of removal. Dkt. No. 18-3 at 17–18. As Bowman explains, the amendment would be "limited to formal inclusion of Mr. Bowman's single member LLC business, in addition to [Bowman] as an individual." *Id.* at 17.

That request must be denied. "Courts have very little discretion—if any—to forgive a failure to comply with the rule of unanimity." *L.Y.E. Diamonds Ltd. v. Gemological Inst.*, 2017 WL 1207839, at *4 (S.D.N.Y. Mar. 31, 2017). To be sure, some lower courts have distinguished between "technical" and "substantive" defects in removal petitions, permitting the former while refusing to entertain the latter after the thirty-day period. *See, e.g.*, *Beter v. Baughman*, 2024 WL 1333570, at *4 (S.D.N.Y. Mar. 13, 2024) (Report & Recommendation).

But most trial courts apply the rule strictly. *See, e.g.*, *Benjamin v. Ollie's Bargain Outlet, Inc.*, 2024 WL 5057750, at *5 (N.D.N.Y. Dec. 9, 2024) (remanding where removing party filed removal petition on behalf of one defendant-entity but not another even though both defendants were represented by same counsel). The Second Circuit has also endorsed a strict construction of the rule. *See Taylor*, 15 F.4th at 153 ("At bottom, nothing in the statute provides a court with any discretion to allow a party to cure a failure to meet the statute's requirements once the thirty-day period for removal lapses.").

There are several exceptions to the "rule of unanimity."  But Bowman is not saved by any of them.  Unanimity is not required where the non-joining defendant: (1) has not yet been served with process at the time of removal; (2) is a "nominal or formal" party; or (3) the removed claim is "separate and independent" within the meaning of 28 U.S.C. § 1441(c).  *See, e.g.*, *Snakepit Auto., Inc. v. Superperformance Int'l, LLC*, 489 F. Supp. 2d 196, 201–02 (E.D.N.Y. 2007).

The only one of these three exceptions that might arguably fit is the one for "nominal or formal" parties.  However, a party only satisfies this definition where "that party has little or no interest in the outcome of the litigation and no cause of action or claim for relief is or could be stated against it."  *Lucas v. Verizon Commc'ns, Inc.*, 2021 WL 1226889, at *5 (S.D.N.Y. Mar. 31, 2021).

That is not the case in this litigation.  The Shop has a meaningful interest in the outcome of this suit, since it involves the business-entity's alleged non-compliance with several state-law regulations.  In any event, Bowman has not explicitly raised this argument, *see* Dkt. No. 18-3, and, for the reasons articulated by the OAG, Dkt. No. 10-1 at 22, it would be meritless.

Even if the Court were to excuse this procedural defect, Bowman has failed to establish that the exercise of federal-question jurisdiction is warranted.  As noted *supra*, the presence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which typically permits a plaintiff to "avoid federal jurisdiction by exclusive reliance on state law."  *Caterpillar, Inc.*, 482 U.S. at 392.

Bowman acknowledges that the OAG's verified petition does not assert a federal-law claim.  Dkt. No. 18-3 at 16–17.  Nevertheless, he contends that federal-question jurisdiction is appropriate because the state-law claims asserted by the OAG raise a "substantial question of federal law."  *Id.*  As he explains:

> The State filed a pleading. Defendants have a right to answer, or, first, to move to dismiss, including on the basis of affirmative defenses, including PLCAA. Fed. R. Civ. P. 12(b). In order for Plaintiff to get the relief requested, Plaintiff must overcome Defendants' defenses under Fed. R. Civ. P. 12(b) and PLCAA. The intention of Defendants to raise such defenses has been clear and articulated from the outset of the "Notice of Removal." The Plaintiff will not be able to rely only upon the claims stated in the pleading. Justice demands, at a very fundamental level, that a defendant – whether civil or criminal, or, in this case criminal disguised as civil – be permitted to respond to the allegations made against him. Plaintiff will have to speak PLCAA if Plaintiff is going to succeed.

Dkt. No. 18-3 at 16. In other words, Bowman argues that the "PLCAA" is a federal defense that will bar or preclude the OAG's state-law claim(s). *See id*.; *see also* Dkt. No. 1 ¶ 61.

The Protection of Law Commerce in Arms Act ("PLCAA") "is a federal statute enacted in 2005 'to prohibit causes of action' against gun industry members 'for the harm solely caused by the criminal or unlawful misuse of firearm productions or ammunition products by others when the product functioned as designed and intended.'" *Nat'l Shooting Sports Found., Inc. v. James*, 144 F.4th 98, 102 (2d Cir. 2025) (quoting 15 U.S.C. § 7901(b)(1)) (internal footnote omitted).

The PLCAA bars any "qualified civil liability action," which is defined as:

> a civil action . . . brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party.

15 U.S.C. §§ 7902(a), 7903(5)(A). "In other words, PLCAA generally establishes that gun manufacturers and distributors cannot be held civilly liable for harm caused by their products when that harm stems from the criminal or unlawful actions of others." *Nat'l Shooting Sports Found, Inc.*, 144 F.4th at 103.

"But PLCAA's general bar on those suits has an exception, usually called the predicate exception, relevant here."  *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 285 (2025).  "That exception applies to suits in which the defendant manufacturer or seller 'knowingly violated a State or Federal statute applicable to the sale or marketing' of firearms, and that 'violation was a proximate cause of the harm for which relief is sought.'"  *Id*. (quoting § 7903(5)(A)(iii)); *Nat'l Shooting Sports Found. Inc.*, 144 F.4th at 104 (explaining that "predicate exception" requires "an underlying (or predicate) statutory violation").

Bowman argues that the OAG will have to show that General Business Law §§ 875 and 898 "satisfy the rigorous requirements of serving as a 'predicate exemption'" in order to proceed against him in this litigation.  Dkt. No. 1 ¶ 61.  The steelmanned version of Bowman's argument is straightforward: he intends to assert an as-applied preemption challenge to one or both of these state-law measures under the PLCAA.  Dkt. No. 18-3 at 16.

Bowman contends that this planned federal defense to liability based on the PLCAA is a maneuver that has been invited by appellate judges, including judges in the Second Circuit.  For instance, Bowman cites to Circuit Judge Dennis Jacobs's concurrence in *Nat'l Shooting Sports Found., Inc. v. James*, 144 F.4th 98 (2d Cir. 2025).[4]  There, Judge Jacobs agreed with the panel majority's conclusion that General Business Law § 898 was not *completely* preempted under the PLCAA, but wrote separately to express his view that the state law might be vulnerable to an as-applied preemption challenge in an appropriate case.  *Id*. at 121 ("It is possible to plead a Section 898 action that threads the eyelet of the predicate exception.").

The problem for Bowman is that modern federal practice does not permit removal based on an actual or anticipated federal defense.  As the Supreme Court has explained, "[t]o determine

---

[4]  Bowman also references Justice Thomas's concurrence in another PLCAA case, *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025).

whether the claim arises under federal law, [courts must] examine the 'well pleaded' allegations of the complaint and *ignore potential defenses*[.]"  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (emphasis added); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 14 (1983) ("[S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.").

Consistent with this modern rule, multiple federal courts have remanded cases in which the removing party claimed that a federal defense to suit based on the PLCAA was sufficient to establish federal-question jurisdiction.  *Soto v. Bushmaster Firearms Int'l, LLC*, 139 F. Supp. 3d 560, 565 (D. Conn. 2015) (rejecting removing party's argument that "they are entitled to have this Court interpret and apply the PLCAA"); *Delaware ex rel. Jennings v. Cabela's Inc.*, 2024 WL 263296, at *3 (D. Del. Jan. 24, 2024) (remanding subpoena enforcement action because "[a]t best, the PLCAA is a federal defense"); *Woods v. Steadman's Hardware, Inc.*, 2013 WL 709110, at *4 (D. Mont. Feb. 26, 2013) (rejecting removing party's assertion that underlying state-law claims arose under the PLCAA because "[a] mere construction or interpretation of federal law does not automatically confer federal-question jurisdiction").

Notably, there are "three – and only three – exceptions to the 'general rule' that 'absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim.'"  *State ex rel. Tong*, 83 F.4th at 138 (quoting *Beneficial Nat'l Bank,* 539 U.S. at 6).  These exceptions apply: (1) if Congress has expressly provided for removal by statute (such as the federal-officer removal statute); (2) if the state-law claims are "completely preempted" by

federal law; or (3) if the vindication of a state-law right necessarily turns on a question of federal law. *Id.* (cleaned up).

Bowman has failed to establish that any of these circumstances might be met. The notice of removal invokes "the artful pleading rule." Dkt. No. 1 ¶ 66. In the Second Circuit, the "artful pleading doctrine" captures the <u>first two exceptions</u> to the general rule against removability that exists when the pleading does not "affirmatively allege a federal claim": cases involving special removal statutes and cases of "complete preemption." *State ex rel. Tong*, 83 F.4th at 133, 138.

But neither of these exceptions apply. First, as explained *supra*, Bowman cannot validly invoke the federal-officer removal statute. Second, and as the OAG correctly explains, Bowman cannot show that either of the state-law regulatory statutes on which the OAG's verified petition relies is "completely preempted" by federal law.

If anything, relevant precedent on the question of "complete preemption" is lining up in the opposite direction. *Nat'l Shooting Sports Found., Inc. v. James*, 144 F.4th 98, 111–13 (2d Cir. 2025) (rejecting preemption challenge to General Business Law § 898); *Gazzola v. Hochul*, 88 F.4th 186, 198–200 (2d Cir. 2023) (per curiam) (affirming denial of preliminary injunction against enforcement of General Business Law § 875 on preemption grounds), *cert. denied*, 144 S. Ct. 2659 (June 17, 2024); *Gazzola v. Hochul*, 2025 WL 2771815 (N.D.N.Y. Sept. 26, 2025) (granting, *inter alia*, motion to dismiss preemption claim against General Business Law § 875).

That leaves the third exception to the well-pleaded complaint rule, which applies where the state-law claim implicates "significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). As the Supreme Court has explained:

> The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus

> justify resort to the experience, solicitude, and hope of uniformity
> that a federal forum offers on federal issues.

*Grable & Sons Metal Prods., Inc.*, 545 U.S. at 312.  "Federal jurisdiction over a state law claim

will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4)

capable of resolution in federal court without disrupting the federal-state balance approved by

Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

      This jurisdictional doctrine is often called the *Gunn/Grable* framework.  "For a 'federal

issue' to be 'necessarily raised,' the 'mere *presence* of a federal issue in a state cause of action'

is insufficient; the pertinent 'question of federal law' must be 'a *necessary element* of one of the

well-pleaded state claims.'"  *State ex rel. Tong*, 83 F.4th at 140 (emphases in original) (cleaned

up).  Properly applied, however, the *Gunn/Grable* framework will only justify the exercise of

federal-court jurisdiction over a "special and small category" of cases.  *Empire Healthchoice*

*Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

      Measured against this general legal standard, Bowman's removal petition does not state a

valid basis for removal.  Nor is there any indication that it could be amended or supplemented to

do so.  Instead, Bowman's petition is replete with generalized complaints about the myriad ways

in which the OAG is allegedly acting improperly by pursuing this state-court enforcement action

against him and the Shop, which does business in the State.  *See, e.g.*, Dkt. No. 1 ¶¶ 71–82.

      The allegations that *might* fit within the *Gunn/Grable* framework can be boiled down to

four broad issues: (1) "whether a state attorney general can pursue alleged violations of federal

law and regulation against a Federal Firearms licensee"; (2) "whether a state attorney general can

usurp, retroactively, the role and authority" of the federal government in a "civil" proceeding for

conduct that occurred between the effective date of the Omnibus Crime Control and Safe Streets

Act of 1968 (the "Gun Control Act") and early December of 2022 (when General Business Law

§ 875 became effective); (3) "whether a state attorney general can *ex post facto* exact punishment against a Federal Firearms [l]icensee using federal law"; and (4) whether General Business Law § 875 "can serve as a predicate exception under PLCAA," since the remedy makes "this manner of civil pursuit the equivalent of a criminal trial without criminal rights." Dkt. No. 1 ¶¶ 84–87.

However, a closer review confirms that none of these issues fit within the *Gunn*/*Grable* framework. For instance, Bowman appears to claim that certain pre-2022 conduct referenced in the OAG's verified petition "necessarily raises" a "substantial federal question" because that conduct "can <u>only</u> be evaluated under federal laws" and therefore must be dismissed based on the preclusive effect of a prior federal-court action. *See, e.g.*, Dkt. No. 1 ¶¶ 72–74 (emphasis in original).

Putting aside the fact that this appears to be a misreading of the verified petition (which alleges violations of state law as of June 2024), Dkt. No. 2 ¶¶ 41–47, all of these issues are, at best, *defenses* based on federal law. Again, though, federal defenses generally do not support removal. *Franchise Tax Bd.*, 463 U.S. at 14. And that general rule holds true when the federal defense might be based on the preclusive effect of a prior federal-court judgment. *Beneficial Nat'l Bank*, 539 U.S. at 6.

Instead of offering a basis for federal-court jurisdiction, the "fact-bound and situation-specific" nature of Bowman's objections to the underlying civil proceeding—at least, once the allegations in his notice of removal are stripped of their sensationalist framing—clearly indicate that the exercise of federal-question jurisdiction would be inappropriate.

As the Supreme Court and Second Circuit have both cautioned, an issue of federal law "tends to be substantial if it is 'a nearly pure issue of law, one that could be settled once and for

all and thereafter would govern numerous [similar] cases.'" *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 145 (2d Cir. 2021) (quoting *Empire Healthchoice Assur.*, 547 U.S. at 700)).

Perhaps the most on-point example is *New York v. Arm or Ally, LLC*, 644 F. Supp. 3d 70 (S.D.N.Y. 2022). In *Arm or Ally, LLC*, the State of New York filed a state-court action under General Business Law § 898 against gun manufacturers who built and sold "unfinished" frames and receivers (so-called "ghost guns") that "can be quickly and easily converted into functional firearms." *Id*. at 73. The gun manufacturers invoked the "substantial federal question" doctrine and removed the action to federal court. *Id*. The State moved to remand, arguing that this was a purely state-law dispute over the application of the General Business Law. *See id*.

The trial court rejected that argument, reasoning that the defendant-manufacturers could satisfy the *Gunn/Grable* framework because the case, though nominally brought under state law, presented a "substantial federal question," *e.g.*, whether the manufacturers' products qualified as "firearms" within the meaning of federal law. *Arm or Ally, LLC*, 644 F. Supp. 3d at 79. As the court explained, the version of state-law in effect at the relevant time explicitly incorporated the definition of a "qualified product" from the PLCAA itself. *Id*.

In other words, the State's theory of the case "necessarily raised" a federal question (the definition of *federal* statutory terms) that was "actually disputed" (the defendant-manufacturers argued that their products did not fit the definition). *Arm or Ally, LLC*, 644 F. Supp. 3d at 78–82. The court concluded that this disputed federal question was "substantial" because the federal-law definitions implicated by the parties' dispute were "central to the federal scheme embodied in the Gun Control Act of 1968." *Id*. at 79. Accordingly, the court denied the motion to remand. *Id*.

But this litigation is nothing like *Arm or Ally*. There is no *necessary* dispute over federal-law definitions, at least none that have been clearly framed like the one in *Arm or Ally*. Instead,

a review of the OAG's verified petition gives every indication that this proceeding involves run-of-the-mill state-law regulations that are routinely enforced against in-state businesses, including things like training employees, keeping records, and establishing reasonable safety measures that are appropriate in light of the nature of the business.

These matters are largely entrusted to state law. Although it may be true that one or both provisions of New York's General Business Law might be preempted by the PLCAA as applied to certain conduct, *Nat'l Shooting Sports Found., Inc.*, 144 F.4th at 121 (Jacobs, J., concurring), it is hard to see how the actual, on-the-ground facts of this particular dispute would necessarily implicate a substantial issue of federal law.

Instead, this civil litigation has all the hallmarks of a fact-bound dispute that will affect the parties, rather than one that gives rises to a substantial federal question that is important to the federal system as a whole. *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 39 (2d Cir. 2025) ("Upon careful, case-specific consideration, most federal law questions raised in connection with state law claims will not be deemed substantial.").

To be sure, the Court can imagine a situation closer to the *Arm or Ally* litigation, where the OAG's theory of the case would necessarily depend on a federal-law definition or on duties imposed by federal law. *See, e.g.*, *Minnesota v. Fleet Farm LLC*, 679 F. Supp. 3d 825, 837 (D. Minn. 2023) (finding a "substantial federal question" where "the only possible source for the duties of care" asserted by state-law negligence claim arose under federal law).

But the burden is on Bowman to explain why this litigation should fit into the narrow carveout articulated in *Gunn* and *Grable*. He has not done so. Instead, he has offered citations to precedent that is factually distinguishable or procedurally inapposite, and often both. Just as the mere fact of being a federal firearms licensee, absent more, does not necessarily mean that

Bowman has been "acting under" a federal officer, the mere fact that Bowman operates a gun shop, absent more, does not necessarily mean that the state-law regulations touching on his Shop give rise to a "substantial federal question." Accordingly, Bowman has not carried his burden of showing that federal-question removal was appropriate, either.

### 3. Fees and Costs

As a final matter, the OAG seeks fees and costs for this motion practice. Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal."

Generally speaking, such an award will be warranted "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). An "objectively reasonable basis" exists "if the removing party had a colorable argument that removal was proper." *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 407 (S.D.N.Y. 2014).

After considering the matter, the Court declines to award fees and costs. It is true that the federal-officer removal statute creates an incentive for "misuse," particularly as a way to stall out litigation. *Roberts*, 98 F.4th at 816. Although the OAG claims that Bowman's removal was just one delay tactic (among others, including defendants' other requests, such as for a stay pending the outcome of other litigation), the Court is not convinced of that fact, at least not at this time.

Likewise, although courts have determined that a violation of the rule of unanimity can itself justify fees and costs, *see Oriska Corp. v. Highgate LTC Mgmt., LLC*, 2021 WL 5119745, at *3 (N.D.N.Y. Nov. 4, 2021) (collecting cases), Bowman's failure to include the Shop in his notice of removal appears to have been an oversight rather than an intentional tactic.

In sum, Bowman's removal petition is meritless, but not frivolous.  So it must be remanded without an award of fees and costs.

## III.   CONCLUSION

This matter must be remanded to the originating jurisdiction.

Therefore, it is

ORDERED that

1.  The OAG's motion to remand (Dkt. No. 10) is GRANTED; and

2.  Defendants' motions seeking competing relief (Dkt. Nos. 6, 8, 14, 18) are DENIED.

The Clerk of the Court is directed to terminate the pending motions and close the file.

**IT IS SO ORDERED.**

Dated:  February 24, 2026
        Utica, New York.

Anthony J. Brindisi
U.S. District Judge